## HARRY E. BACK *vs.* PEOPLES NATIONAL FIRE INSURANCE COMPANY.

First Judicial District, Hartford, March Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KELLOGG, Js.

While the evidence of a mutual mistake, essential to the reformation of a written instrument, must be clear and convincing—since the writing is presumed to express the real agreement of the parties—it is not necessary that the existence of the mistake should be established beyond a reasonable doubt; it is sufficient if it be proved, as in other civil cases, by a fair preponderance of the evidence.

A fire insurance company cannot be presumed to have intended to issue a policy insuring a building upon land which the company knew was not owned by the insured, if a clause therein expressly provides that in such case the policy shall be void. Under such circumstances the issuance of such a self-destructive policy can be explained only on the theory of deception, inadvertence or mistake, on the part of one or both parties.

In the present case the agent of the company when he solicited the

insurance, was informed by the owner of the building that he did not own the land on which it stood. *Held* that the knowledge of the agent so acquired was in law the knowledge of the insurance company.

Answers of a jury to interrogatories must be read so as to make them consistent, if that can reasonably be done.

The jury found, in answer to three separate interrogatories, that the fair value of the building immediately before the fire was $2,000, that the amount of the plaintiff's loss by reason of the destruction of the building by fire was $2,000, and the value of the plaintiff's personal property in the destroyed building was at least $300. The court had properly instructed the jury, in effect, that as the plaintiff, being only lessee of the land, might have to abandon, sell, or move the building in the near future, the actual, fair value of the house at the time of its destruction did not necessarily control their conclusion as to the amount of the plaintiff's loss. The policy covered a loss of $1,500 to the building and $300 to its contents. *Held* that in order to read the answers so as to make them consistent, it would be understood that the plaintiff's loss of $2,000 included the admitted loss of $300 on the personal property, and hence that his actual loss on the building alone was $1,700, of which only $1,500 was covered by the policy.

The defendant insisted that the plaintiff was guilty of laches in not reading his policy and discovering that it was void. *Held* that the defendant was not in a position to urge such a claim, inasmuch as the plaintiff had the right to rely upon the fulfilment by the defendant of its promise to issue a valid policy.

The sole ground upon which the defendant refused to pay the face of the policy, was that it was not liable at all. *Held* that in this situation the trial court did not err in computing interest on the face of the policy from the date of the action.

Argued March 7th—decided March 29th, 1922.

ACTION for the reformation of a policy of fire insurance, and for the recovery of a loss thereunder, brought to the Superior Court in Windham County where the issues affecting the reformation of the policy were tried to the court, *Webb, J.*, and those touching the question of loss were tried to the jury at the same time; the court reformed the policy and upon a verdict for the plaintiff rendered a judgment in his favor for $1,914, from which the defendant appealed. *No error.*

The policy in suit insured the plaintiff from June 18th,

1918, to June 18th, 1921, from loss by fire in the sum of $1,500, to a described dwelling-house, and in the sum of $300 to its contents. The policy is in the form prescribed by § 4075 of the General Statutes, and stipulates that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if "—among many other contingencies —"the subject of insurance be a building on ground not owned by the insured in fee simple." The house and contents were wholly destroyed by fire on May 2d, 1919, and the complaint, after the usual allegations of loss and proof of loss, alleges that the defendant denies responsibility because the house was on ground not owned by the insured in fee simple. The fact that it was on ground not owned by the insured is admitted; but the complaint avers that the defendant's agent, through whom it issued the policy, was so informed by the plaintiff at the time when the policy was arranged for; that until the company denied liability, plaintiff supposed the policy was drawn to cover the house as he had described it, and that the defendant refuses to correct the policy and to make it conform to the actual agreement.

Defendant's answer denies all the allegations of the complaint on which the prayer for reformation is based. On the trial the court submitted the following issues of fact to the jury in the form of special interrogatories, which, with their answers, are as follows:—

"1. Before the issuance of the insurance policy in suit, plaintiff's Exhibit A, did the plaintiff inform the defendant's agent Woodworth, that the building to be insured was on ground not owned by the plaintiff in fee simple? The answer of the jury: Yes.

"2. What was the fair value of the building immediately before the fire? The answer of the jury: $2,000.

"3. What was the amount of loss or damage sustained by the plaintiff by reason of the destruction of the building by fire? The answer of the jury: $2,000.

"4. Was the value of the personal property owned by the plaintiff that was in the building destroyed by fire, at least $300? The answer of the jury: Yes.

"5. Did the plaintiff make due proof of loss as required by the policy? The answer of the jury: Yes."

These special verdicts the court accepted, and found the facts accordingly.

Other findings by the court are that in 1900 the Peoples Tramway Company leased certain lands in the town of Killingly for ten years with the option, afterward exercised, of one renewal for a second term of ten years. The house in question, which stood on a part of this land, was transferred by the lessee to the plaintiff with an agreement, made upon good consideration, that plaintiff might maintain it and might use the land on which it stood and the land appurtenant to it, so long as the lessee should continue to hold the premises. The court ruled that the defendant was obligated, if it issued any policy at all, to issue one that should not be void by reason of the building standing on land of which the plaintiff was not the owner in fee simple; that the plaintiff was not guilty of laches in failing to read or examine the policy of insurance issued to him; that the defendant was estopped from claiming that the policy in question was void; that the policy be and is reformed and corrected; and that the damage to the plaintiff is in excess of $1,800. For this amount, with interest from the date of the commencement of this action, judgment was entered.

*Ralph O. Wells*, for the appellant (defendant).

*Charles E. Searls*, for the appellee (plaintiff).

BEACH, J.   "To warrant the reformation of a con-
tract on the ground of mutual mistake, the mistake
must have been common to both parties, and it must
appear that by reason of it both have done what neither
intended, and the evidence should be clear, substantial,
and convincing as to both these facts."   *Snelling v.
Merritt,* 85 Conn. 83, 100, 81 Atl. 1039.

One of the reasons of appeal is that in this action
no antecedent variant agreement was alleged or proved.
As to this point the complaint alleged, and the court
has found, that the plaintiff in seeking to insure his
house informed the defendant's agent that it stood on
ground not owned by him in fee simple.   The knowledge
of the agent, thus acquired while he was acting within
the scope of his authority and in the course of the par-
ticular transaction which the information affected, is
in law the knowledge of the defendant.   *Trumbull* v.
*Hewitt,* 65 Conn. 60, 74, 31 Atl. 492.   The defendant
cannot hide behind its agent's negligence in failing, if
he did fail, to communicate that fact.   Therefore, the
legal effect of the facts alleged and proved is, that when
the defendant, being so informed, agreed to issue a
policy of insurance on the plaintiff's house, it agreed
to insure the house although it stood on ground not
owned by the plaintiff.

Another reason of appeal is that the court erred in
refusing to charge, as requested, that the plaintiff must
establish the facts upon which he based his claim to a
reformation of the policy, "beyond a reasonable doubt";
and erred in charging the jury that the fact inquired
about by the first interrogatory might be established
by a fair preponderance of the evidence.   In support
of the rule of proof contended for, the defendant relies
on statements, often found in cases of this kind, to
the   effect   that   the   basic   facts   of   mistake   and
of consequent failure to effectuate the   real   intent

of the parties must be established by "clear and convincing," or "overwhelming," evidence; or by evidence such as to leave "no reasonable doubt," or "no room for doubt." *Snelling* v. *Merritt, supra; Palmer* v. *Hartford Ins. Co.*, 54 Conn. 488, 9 Atl. 248; *Park Bros. & Co.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, 29 Atl. 133; *Bishop* v. *Clay Ins. Co.*, 49 Conn. 167; *Hearne* v. *Marine Ins. Co.*, 87 U. S. (20 Wall.) 488, 490. These authorities do not justify the claim of law made in the defendant's request, which assumes that the formula "beyond a reasonable doubt" is indispensable in charging the jury in actions for the reformation of written contracts. The cases cited do not adopt that formula, for they state the broad proposition, that the proof must be convincing, in a variety of ways. This makes it certain that the expressions relied on refer merely to the difficulty of overbalancing the presumption that the writing expresses the real agreement of the parties. The evidence must be convincing, not because the rule of proof differs from that in other civil actions, but because the counter weight of the written contract cannot ordinarily be overbalanced by parol evidence which is not clear, or not convincing, or leaves room for doubt. No uniform standard of proof can be required by law in this class of cases, for the presumption in favor of the written evidence of the agreement varies according to the facts of the particular case. The plaintiff must, as in all civil cases, establish his affirmative allegations by a fair preponderance of the evidence; and in this class of cases, as in those where fraud is alleged, the preponderance of evidence must be clear and convincing. In this case, for example, it turns out after the loss that the policy is wholly void on its face by reason of a fatally defective description of the subject-matter of the insurance. Since the parties could not mutually, intentionally

and in good faith, have agreed to misdescribe the subject of insurance in such a way as to make the policy self-destructive, the policy is in that particular inexplicable except on the theory of deception, inadvertence or mistake, on the part of one or both parties. A contingency has happened on which it is provided in the writing itself that the policy shall be wholly void. In other words, that it shall not be treated as expressing the real agreement of the parties. And so the usual presumption, that the writing expresses the real agreement, is wholly overcome by the admitted fact that the house stood on ground not owned by the insured in fee simple. It is in fact a part of the defendant's own case that the policy does not express the real agreement of the parties, and the question whether they made any other mutual agreement, and if so what that agreement was, are simple questions of fact unembarrassed by any presumption arising from the policy itself.

The court properly instructed the jury that the actual, fair value of the house at the time when it was destroyed by fire, did not necessarily control their conclusion as to the amount of loss or damage sustained by the plaintiff; because the plaintiff might, in the near future, have been required either to abandon the house to the owners of the land, or to go to the expense of moving it to some other location, or to sell it to a purchaser who would assume that expense. Nevertheless, the jury in answering the second interrogatory fixed the fair value of the building immediately before the fire at $2,000, and in answering the third interrogatory fixed "the amount of loss or damage sustained by the plaintiff by reason of the destruction of the building by fire " at the same figure of $2,000. From the identity of these answers the defendant argues that the jury must have failed to grasp the distinction pointed

out by the court, and hence that the court erred in deny-
ing the defendant's motion to set aside or disregard the
answer to the third interrogatory. We think, however,
that the real difficulty which the jury had arose from
the form of the third interrogatory, which may easily
be understood as asking for the amount of the loss sus-
tained by the plaintiff by reason of the destruction of
the building, including the admitted loss of $300 on its
contents. We are bound to read the answers to the
interrogatories so as to make them consistent, if that
can reasonably be done, and it can be done in this case.
So understood, the finding of the jury is that the plain-
tiff's actual loss on the building alone was $1,700, of
which only $1,500 was covered by the policy.

It is alleged that the court erred in ruling that the
plaintiff was not guilty of laches in failing to read or
examine the policy, and the attempt is made to dis-
tinguish this case from *Palmer* v. *Hartford Ins. Co.*, 54
Conn. 488, 9 Atl. 248. In that case the complaint alleged
that the plaintiff applied for a renewal of an expiring
policy of fire insurance on the same terms as before, and
that defendant promised to renew the insurance on the
same terms; that plaintiffs, relying on this promise, did
not read the policy and did not discover until after
the loss that it contained a co-insurance clause which
materially affected the amount of recovery. The
prayer was for a correction of the policy and for re-
covery of the loss payable under the policy as corrected.
On demurrer sustained and appeal from a judgment
for the defendant, we reversed the judgment on the
ground that defendant, having promised that the new
policy should be on the same terms as the old, was not
in a position to charge the plaintiff with neglect in
failing to discover that it was not so. The *Palmer* case
seems to be exactly in point. This defendant having
agreed to insure the plaintiff's house, although it stood

on land not owned by the insured, is in no position to charge the plaintiff with negligence in failing to discover that it did not do so.

Upon this issue of plaintiff's negligence the defendant relies on findings that the plaintiff has carried insurance on his house since 1900, under successive three year policies, none of which described it as standing on land not owned by him; and that the plaintiff never read any one of these former policies. We think, however, the transaction in suit stands by itself. The policy is referred to in the testimony as a "renewal"; but the essential fact is that the plaintiff at the time of applying for it informed the defendant's agent that the house stood on land not owned by him. The transaction thus begun gave rise to a fresh set of legal rights and obligations.

The court did not err in computing interest on the face of the policy from the date of the action. The money sued for was not detained by the defendant, because the value of the plaintiff's interest in the house was uncertain and unliquidated. Besides that would not justify the detention of the admitted loss of $300 on its contents. The sole ground on which the money was detained was that the defendant was not liable at all, and the detention was therefore wrongful. *Capitol City Lumber Co.* v. *Sudarsky*, 95 Conn. 336, 341, 111 Atl. 349.

There is no error.

In this opinion the other judges concurred.