PIETRO MANCINI *et al. vs.* YORKSHIRE INSURANCE CO. LTD., OF YORK, ENGLAND.

SAME *vs.* UNITED STATES FIRE INSURANCE CO. OF NEW YORK.

JANUARY 10, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. These are bills in equity brought to reform two policies of fire insurance issued by respondents to complainants. The causes were heard by a justice of the Superior Court, first on the prayer for reformation on the ground of mutual mistake and later as to the amount of the damages. The court granted the prayer to reform the policies and at the subsequent hearing assessed complainants' damages at the total amount of each policy, and decrees were entered in accordance with these decisions. The causes are here on respondents' appeals from said decrees.

The insured property consisted of a "frame ice house and additions . . . occupied as an ice house" and, although not so described in the policies, stood upon leased land. The policies contained the usual clause that "if the subject of insurance be a building on ground not owned by the insured in fee simple" the entire policy should be void unless otherwise provided by agreement indorsed upon and added to the policy.

It appeared in evidence that on October 31, 1925, two of the complainants leased the land in question for a period of eleven years; that on December 15, 1926, together with Mancini, the third complainant, to whom they assigned a one-third interest in said lease, they formed a partnership to carry on a general ice business; that Mancini, in behalf of the partnership, conducted all negotiations with one Olivo, the respondents' agent, to obtain two policies insuring complainants' property for direct loss or damage by fire for one year, which policies were issued on February 27 and March 3, 1931; that the complainants paid their premiums as required and that on October 25, 1931, the building and equipment were destroyed by fire.

Mancini testified that at the time Olivo interviewed him about insuring the ice-house he told the agent he "had the ice-house . . . on Mr. Whipple's property" and that

later the agent assured him the policies were valid. He further testified that after the fire and respondents' refusal to pay the loss Olivo stated to him that at the time he issued the policies he knew the ice-house was on leased land but did not know that respondents would not insure such property. The two other complainants testified that Olivo had made the same statement to them, and this evidence was corroborated by two more witnesses.

Olivo testified that when Mancini approached him about insuring the ice-house Mancini said the building was "on Whipple Court" which in no way suggested to him that it was located on leased land. The agent admitted his ignorance that such a fact affected the validity of the policies and that a rider was necessary on an insurance policy of this type. It also appeared that he did not know the meaning of the term "fee simple" and that he and another agent of the respondents inspected the property before the policies were issued.

There is no evidence indicating that complainants at any time voluntarily concealed from said agent any facts about which they were interrogated, nor is there any charge of fraud on the part of anyone. The trial justice found as a fact that "Olivo knew when . . . he agreed to issue the policies to the complainants insuring the ice-house that it stood on leased land and that neither he nor the three partners knew of the policy condition . . . in respect to the ownership in fee simple of the land on which the building stood." He further found that because of a mutual mistake the policies did not correspond to the intentions of the parties, and he ordered the policies to be reformed and at a subsequent hearing awarded damages.

The respondents' appeal is based upon the grounds: (1) There was no meeting of the minds of the parties regarding the complainants' real interest in the building and the ground upon which it was located; (2) Complainants' proof of a mutual mistake is not full, clear and satisfactory; (3) Damages, if any, should not be awarded on the basis of the sound value of the ice-house.

It is necessary to consider the question of the extent of the agency of Olivo. It appears from the records of the State Insurance Department that he was the duly appointed "agent" of both companies. As was testified to, "general agency" is a matter of contract between the companies and their agents. The only authority or license granted by the State to individuals to transact fire insurance business is to act as "agent." No distinction is made by the license department regarding "general agents," "special agents," or "soliciting agents." However, as the business is conducted, limitation of authority between the companies and their agents is a matter of fact, and we have previously held that an agent for an insurance company, empowered merely to receive written applications for insurance and to transmit them to the company, is the agent of the insured; that knowledge of a "special agent" of the insured's partial ownership, which vitiated a policy, was not the knowledge of the company and that knowledge of a "general agent" might stand upon a different basis. See *Wilson* v. *Conway Fire Ins. Co.*, 4 R. I. 141; *Reed* v. *Equitable Fire & Marine Ins. Co.*, 17 R. I. 785; *Salvate* v. *Firemen's Ins. Co.*, 42 R. I. 433; *Inventasch* v. *Superior Fire Ins. Co.*, 48 R. I. 321.

In the instant case no actual limitation of Olivo's authority has been proven. He was duly licensed as an "agent." He executed endorsements on and countersigned both policies in his name as agent for the companies. This he did by writing his name in ink in the appropriate places, both policies providing that the same should "not be valid until countersigned by the duly authorized Agent of the Company . . ." Olivo's name also appears on a sticker attached to the outside of each policy. No other agent's name appears anywhere upon either policy. He testified that he never had any instructions from the companies about insuring buildings on leased land. To the applicants for insurance he stood in the place of the insurance companies. *Fliger* v. *Pa. Fire Ins. Co.*, 48 R. I. 274.

The bills of complaint allege and the court has found that the complainants in seeking to insure the ice-house informed the respondents' agent that it stood on ground not owned by them in fee simple. The knowledge of the agent thus acquired, while he was acting within the scope of his authority and in the course of the particular transaction which the information affected, is in law the knowledge of the respondents. The respondents cannot hide behind their agent's negligence in failing to communicate that fact. Therefore the legal effect of the facts alleged and proved is that when the respondents, being so informed, agreed to issue policies of insurance on the complainants' ice-house they agreed to insure the ice-house although it stood on ground not owned by complainants. See *Back* v. *Peoples Nat. Fire Ins. Co.*, 97 Conn. 336.

The law applicable to a situation of mutual mistake is clearly stated in *Allen* v. *Brown*, 6 R. I. at 396, wherein this court, in an opinion by AMES, C. J., says: "The power and duty of a court of equity to reform an instrument drawn by mistake, so as to make it express what both parties originally intended, is unquestionable" and quotes with approval from 1 Story, Equity Jurisprudence, § 155, the statement that a court without such power would "be of little value if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake to resist the claims of justice, under the shelter of a rule framed to promote it." See also *Dwyer* v. *Curria*, 52 R. I. 264.

There is clear and convincing evidence of mutual mistake on the part of both parties to support the prayer for reformation of the policies.

It remains to consider the basis for awarding damages. The complainants' testimony indicated a sound value in the ice-house, at the time of loss, of $4,000. The respondents

did not produce any testimony as to the value of the destroyed building but did put in evidence the rate of depreciation of ice-houses such as the one in question and also evidence relating to the foundation and its cost.

The respondents contend that the measure of damage should be the value of the leasehold interest. The authorities, however, support the rule that where a leased building is insured for the lessee, unless otherwise limited in the contract, the insurer is liable for the sound value of the building in case of loss. See *Fowle* v. *Springfield Fire & Marine Ins. Co.*, 122 Mass. 191; *Plum Trees Lime Co.* v. *Keeler*, 92 Conn. 1; *Kludt* v. *German Mutual Fire Ins. Co.*, 152 Wis. 637.

There was no error in the rulings of the trial justice granting the prayer to reform the policies and assessing the damages at the total amount of each policy.

The appeals are denied and dismissed, the decrees appealed from are affirmed and each case is remanded to the Superior Court for further proceedings.

*Knauer & Fowler, Luigi De Pasquale,* for complainants.
*William A. Gunning,* for respondents.