## NATIONAL RESERVE INS. CO. OF IL-LINOIS v. SCUDDER et al. *
### No. 7298.

Circuit Court of Appeals, Ninth Circuit.
June 15, 1934.

*Rehearing denied Aug. 29, 1934.

Redman, Alexander & Bacon and R. P. Wisecarver, all of San Francisco, Cal., for appellant.

Butler, Van Dyke & Harris and Hugh J. Strachan, all of Sacramento, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

This was a suit to reform a policy of fire insurance issued by appellant, defendant below, and to recover thereon the sum of $5,000. The complaint alleges that on November 23, 1927, the plaintiffs, W. C. Scudder and S. C. Blanchard, copartners operating a fruit packing establishment at Fair Oaks, Cal., applied to G. C. Hubbell, local agent of the defendant insurance company, for a policy of fire insurance, in the amount of $5,000, on a fruit packing building owned by the plaintiffs at Fair Oaks. Insurance of $4,000 was to be placed upon the building and $1,000 on the machinery and equipment therein. It is alleged that the application for insurance was made verbally to said Hubbell, with the request that the insurance be written in the names of the plaintiffs, and that thereafter the policy was issued by the defendant company, but it was by mistake written in the name of Mrs. S. C. Blanchard, the wife of one of the plaintiffs. Plaintiffs then allege that they did not examine the policy and did not know that it was written in the name of Mrs. Blanchard, but believed that it had been issued in their names, as requested, and did not learn that it had not been so issued until November, 1930, when the property was destroyed by fire.

The insurance company refused to pay the loss, claiming that the negligence of plaintiffs in failing to examine the policy had caused it to accept reinsurance of the same risk from another company, to its prejudice and damage. This defense was also set up in the answer in opposition to the prayer for reformation. Defendant also alleged that the policy was issued in the name of Mrs. Blanchard in accordance with the application therefor. The answer also set up as an affirmative defense that the policy was void (1) because the insured property was located upon leased ground, and (2) because the property was incumbered by a chattel mortgage, contrary to provisions of the policy.

The court found generally in favor of the plaintiffs and decreed that the policy be reformed, as follows: "(a) To show that W. C. Scudder and S. C. Blanchard were the sole and unconditional owners of the property insured, and were and are the insured under the policy, in the place and stead of the defendant, Mrs. S. C. Blanchard, and (b) To show that the buildings and property insured were on leased ground, and that the defendant had waived the provisions of said policy reading as follows: 'This entire policy shall be void * * * (c) if the subject of insurance be a building on ground not owned by the insured in fee simple * * *'."

It was stipulated "that if plaintiff is entitled to recover, the total amount recoverable is $3319.39."

Appellant contends that the court erred in allowing a reformation of the policy, "because there was no clear and satisfactory evidence of a mutual mistake justifying a revision; that the mistake, if any, was not a mutual mistake and was caused by the negligence of the plaintiffs themselves; that the plaintiffs were guilty of laches and negligence in not discovering it and calling it to the attention of appellant, and further that the appellant has been damaged and prejudiced by the negligence and laches of the plaintiffs."

The trial court found that "through an error of Hubbell [appellant's agent], the policy, instead of being issued in the names of the copartners, the plaintiffs, was issued in the name of Mrs. Blanchard, the wife of S. C.

886

Blanchard, one of the partners." The evidence amply sustains this finding. The partners testified that they asked Hubbell to procure a policy of insurance on the property payable to themselves, and Hubbell admitted in his testimony that "there may have been a change of their telling me to write it up in the firm's name, Blanchard and Scudder, but evidently at the time I thought differently and put it in her [Mrs. Blanchard's] name." There is also testimony that Hubbell was given the expiring policy on the property, which was in Mrs. Blanchard's name, and was asked to renew it, without being told to change the name of the assured from Mrs. Blanchard to the partnership. The application for the new policy contains the notation, "This is a copy of the old policy that has expired." Hubbell testified that he had "a faint idea" that the property may have been owned by Mrs. Blanchard. On the other hand, Scudder, one of the partners, testified that, prior to October, 1927, Blanchard, his copartner and uncle, "had introduced me to Mr. Hubbell as his nephew and told him I was buying a half interest in the packing house and the packing business," and Hubbell testified that he knew the appellees "were doing business in the fruit company as partners." Hubbell was the president of the local bank with which the partners did business, and he testified that "the bank account and all their business was in the name of Blanchard and Scudder," and that he could not segregate the business from the ownership of the property. The partners also testified that Mrs. Blanchard had no interest or ownership in the property or the business.

It is true, as contended by appellant, that the evidence to support a decree for reformation must be clear and satisfactory; that a mere preponderance of the evidence is insufficient; and that relief will not be granted on evidence which is confusing and contradictory. 53 C. J. 1030, § 199, and 1037, § 202.

"But this does not mean that there should be no contrariety in the proof or that the evidence must be undisputed; and where the mistake appears clearly and positively in spite of the conflict and justice requires correction, it will be decreed." Id., § 202.

The case at bar clearly falls within the rule last stated. Despite the conflict in the testimony—if indeed it can be said that there is any substantial conflict—the mistake appears clearly and positively, and reformation should be decreed.

It is also true that where mistake alone is relied on as a ground for reformation, the mistake must be mutual; that is, shared by both parties. 53 C. J. 945, § 60. We are of opinion that the mistake in this case was mutual. The mistake on the part of Hubbell seems quite clear. He admitted, as much in his testimony, when he said that the partners may have told him to write the policy in their names, "but evidently I thought differently and put it in her name." The partners were acting under a mistaken belief that the policy had been issued in their names, as requested, which mistake they did not learn of until after the loss occurred.

As was aptly said in Mancini v. Yorkshire Ins. Co., Limited, of York, England (R. I.) 170 A. 82, 83: "The law applicable to a situation of mutual mistake is clearly stated in Allen v. Brown, 6 R. I. at page 396, wherein this court, in an opinion by Ames, C. J., says: 'The power and duty of a court of equity to reform an instrument drawn by mistake, so as to make it express what both parties originally intended, is unquestionable,' and quotes with approval from 1 Story, Equity Jurisprudence, § 155, the statement that a court without such power would 'be of little value if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake, to resist the claims of justice, under the shelter of a rule framed to promote it.' See, also, Dwyer v. Curria, 52 R. I. 264, 160 A. 206."

It must be conceded that mere failure to examine a policy does not constitute such negligence or laches as will bar reformation. See 26 C. J. 106, 107, § 105; Home Ins. Co. v. Sullivan Machinery Co. (C. C. A. 10) 64 F.(2d) 765, 767. But it is contended that the negligence of appellees in this respect resulted in prejudice and damage to appellant, and that reformation should therefore be denied. As stated in the brief, appellant's position is as follows: "Appellant has been damaged in the sum of $1,000 by the neglect of plaintiffs to read their policy—to at least look at their policy and see to whom it is issued—and to call the mistake (if there was a mistake) to the attention of appellant so that the policy could be correctly written and to have thereby prevented appellant from innocently and unknowingly accepting reinsurance from another company upon the identical risk after it had taken the precaution to reinsure its direct line of insurance from $5,000 down to a net of $1,500. When the fire occurred your

appellant was damaged to the extent of $1,-000 by having the pyramided insurance upon the same exposure."

We fail to see how appellant can complain of the negligence of appellees in failing to read the policy, or how any negligence on the part of appellees can be said to have resulted in prejudice to appellant. On the contrary, it appears that any prejudice suffered by appellant resulted from its own negligence. As we have seen, the mistake in the name of the assured under the policy was the mistake of Hubbell, appellant's agent. Likewise, it would appear that appellant was negligent in failing to notice the similarity of names and, in particular, the identity of the risk at the time it accepted the reinsurance, especially in view of the fact that the company from which appellant accepted reinsurance of the risk has "the same Home Office and the same management" as the appellant company, "and they exchange business back and forth." Under such circumstances, it would appear that appellant's own negligence in failing to notice the identity of the risk insured was the cause of the pyramided liability, rather than any negligence on the part of appellees in failing to read the policy when it was issued and delivered to them. We might also add that the policy was handed to appellees together with other papers by Hubbell, at his bank, and no mention was made of the insurance.

■ Appellant also seeks to avoid liability under the policy because the property was located upon leased ground, contrary to a provision of the policy avoiding it "if the subject of insurance be a building on ground not owned by the insured in fee simple." However, appellant's agent Hubbell admitted that he knew the property was located upon leased ground. His knowledge was imputed to appellant. Rapides Club v. American Union Ins. Co. of New York (D. C.) 35 F.(2d) 253; Wolpers v. Globe & Rutgers Fire Ins. Co. (Mo. App.) 61 S.W.(2d) 224, 226; Mancini v. Yorkshire Ins. Co., Limited, of York, England (R. I.) 170 A. 82, supra. For that reason the trial court properly held that the policy "should also be reformed to conform to the intention of the parties that the insurance should protect the property notwithstanding the fact that it was on leased ground."

The case of Mancini v. Yorkshire Ins. Co. etc., supra, was a suit by the insured to reform fire insurance policies, on the ground of mutual mistake. In affirming a decree for reformation, the Supreme Court of Rhode Island said: "The bills of complaint alleged and the court has found that the complainants in seeking to insure the icehouse informed the respondents' agent that it stood on ground not owned by them in fee simple [contrary to a provision in the policies similar to the one in the case at bar]. The knowledge of the agent thus acquired, while he was acting within the scope of his authority and in the course of the particular transaction which the information affected, is in law the knowledge of the respondents. The respondents cannot hide behind their agent's negligence in failing to communicate that fact. Therefore the legal effect of the facts alleged and proved is that when the respondents, being so informed, agreed to issue policies of insurance on the complainants' icehouse they agreed to insure the icehouse although it stood on ground not owned by complainants. See Back v. People's Nat. Fire Ins. Co., 97 Conn. 336, 116 A. 603."

■ The policy contains a provision that the insurer "shall not be liable for loss or damage to any property insured hereunder while encumbered by a chattel mortgage." It is admitted that a chattel mortgage was given on the property insured to secure a promissory note in the amount of $9,500, executed in December, 1928, about a year after the policy of insurance was issued. Appellant sought to avoid liability under the policy on the ground that $1,000 of this mortgage was outstanding at the time of the loss. The appellees testified that the mortgage indebtedness had been satisfied in full prior to the fire. On this issue, the court made the following finding, as set forth in its memorandum opinion[1]: "The mortgage was placed on the insured property after the issuance of the policy, and, while there is serious conflict in the evidence on the subject, I believe and find that the note or notes secured by the mortgage were paid prior to the fire. The mortgage doubtless suspended the validity of the insurance, but the payment of the mortgage replaced the property under the protection of the policy. There are cases which appear to hold to the contrary, but they are based on the language of the policies, and it is thought that no case can be found so holding when the policy provides as does the one in question that the company 'shall not be liable for loss or damage to any property *while* encumbered by a chattel mortgage * * * .' The word 'while' means that the policy is ineffective only during the existence of the mortgage."

■ It would serve no useful purpose to set

---

[1] Not for publication.

forth the conflicting testimony relating to payment of the mortgage, because after an examination of the record, we feel bound by the well settled rule that the findings of the chancellor, based on conflicting evidence, are presumptively correct and will not be set aside unless a serious mistake of fact appears. See Coats v. Barton (C. C. A. 8) 25 F.(2d) 813, 815; Grace v. Tannehill (C. C. A. 5) 54 F.(2d) 1059, 1061; Clarke v. Hot Springs Electric Light & Power Co. (C. C. A. 10) 55 F.(2d) 612, 615, certiorari denied 287 U. S. 619, 53 S. Ct. 19, 77 L. Ed. 537; Klaber v. Lakenan (C. C. A. 8) 64 F.(2d) 86, 89, 90, 90 A. L. R. 783; Suburban Improvement Co. v. Scott Lumber Co. (C. C. A. 4) 67 F.(2d) 335, 336, 90 A. L. R. 330. A careful study of the entire record, however, convinces us that, if the case were tried de novo in this court, we would affirm the decree on the facts.

It is contended, however, that, even though the mortgage may have been satisfied, it was still of record at the time of the loss and that the policy was therefore void under the foregoing provision that the company shall not be liable while the property insured is encumbered by a chattel mortgage. We believe this contention to be without merit, and agree with the trial court that "the payment of the mortgage replaced the property under the protection of the policy," and that "The word 'while' means that the policy is ineffective only during the existence of the mortgage." To adopt the interpretation contended for by appellant would be to read into the provision in question a meaning which the words thereof clearly do not express.

■ Error is assigned to the action of the court in denying appellant's motion "for findings and judgment." The record discloses that at the time the motion was denied the court entered an order "that a decree be entered in favor of the plaintiffs as provided in the memorandum opinion this day filed, and that said opinion be and is adopted as the findings of fact and conclusions of law herein." In discussing this assignment, appellant says: "The numerous errors made in this memorandum opinion both in regard to the facts and to the irrelevant statements therein, which apparently caused an erroneous conclusion on the part of the trial judge, indicates the danger of allowing memorandum opinions to be substituted for the findings of fact provided by the rules of the court. It is our contention that our motion for findings should have been granted by the court in accordance with Equity Rule 70½ (28 USCA § 723). In any event, we believe

the case is one for the appellate court to exercise its full equity jurisdiction and decide the case de novo in accordance with the equities disclosed by the evidence."

While Equity Rule 70½ requires that "the court of first instance shall find the facts specially and state separately its conclusions of law thereon," and a literal compliance therewith would be attended with undoubted advantages to an appellate court and facilitate the presentation and consideration of appeals, we think the mere fact that the findings and conclusions—if sufficiently specific and otherwise in compliance with the rule—are set forth in the court's written opinion and adopted by the court as such findings and conclusions, is not such a violation of the rule as calls for a reversal of the decree.

■ However, we do not wish to be understood as holding that a mere discussion of the facts by the court in an opinion will be deemed a sufficient compliance with the rule, and we reserve the right in each case to decide whether the findings and conclusions as set forth in the opinion should be accepted in lieu of separate and distinct findings, or whether the case will be returned to the trial court for appropriate findings.

In the instant case, we think the findings and conclusions on material issues substantially comply with the rule.

■ We need not discuss the merits of the remaining assignments of error, relating as they do to alleged erroneous admission of testimony, for if, in fact, the testimony was improperly admitted, there is a presumption that it was disregarded by the chancellor. Elliott v. Gordon (C. C. A. 10) 70 F.(2d) 9, 13. In any event, we find those assignments to be without merit.

■ The policy provides: "A loss herein shall be payable in thirty days after the amount thereof has been ascertained either by agreement or by appraisement; but if such ascertainment is not had or made within sixty days after the receipt by the company of the preliminary proof of loss, then the loss shall be payable in ninety days after such receipt."

The proof of loss was not made out until January 9, 1931. Thereafter the parties disagreed and an appraisal was had according to the terms of the policy. The decree, however, allows interest from the date of the fire. The general rule is that interest is not recoverable until the loss is payable. 7 Couch on Insurance, p. 6187. We believe it was error to award interest from the date of the fire. Appellees do not contend to the contrary. They concede that "should this court

feel that the judgment should not have been entered with interest from the date of the fire, the court may on appeal alter the judgment so as to provide that interest should be paid from the date of the appraisement." The decree will therefore be modified in that respect.

As so modified, the decree is affirmed.