**RING v. SPINA et al.**

**No. 138, Docket 20838.**

Circuit Court of Appeals, Second Circuit.

March 1, 1948.

New York City, on the brief), for defendants-appellees Spina, Heyman, Hannan, and Pauker.

Greenbaum, Wolff & Ernst, of New York City (Jonas J. Shapiro and Milton Ross, both of New York City, of counsel), for defendant-appellee Authors' League of America, Inc., sued herein as Dramatists' Guild of Authors' League of America, Inc.

Before AUGUSTUS N. HAND, CLARK, and WOODBURY, Circuit Judges.

CLARK, Circuit Judge.

This action was before us previously on appeal from a denial of a temporary injunction pending trial. Plaintiff, suing under the Sherman Anti-Trust Act, § 1 et seq., as amended, 15 U.S.C.A. § 1 et seq., claimed treble damages and other relief for injuries due to the acts of the defendants in preventing production by him of a dramatic musical composition called "Stovepipe Hat," in which he had invested heavily. On the previous appeal we held that there was sufficient prima facie showing of joint acts in restraint of trade to require the holding of matters in statu quo pending trial and without the immediate reference to arbitration which defendants were seeking. Accordingly we reversed for the issue of a temporary injunction. Ring v. Spina, 2 Cir., 148 F.2d 647. The present appeal is from an order denying jury trial notwithstanding plaintiff's claim therefor; for as the case took its leisurely course through the district court, slowly advancing toward the head of the jury calendar, the court granted defendants' motion to strike the case from that calendar and plaintiff again appealed.

The action was originally instituted on June 14, 1944, at which time plaintiff also filed his jury demand. Answers were filed in July, 1944. Then—curiously, in view of the limitation of such motions to the period before answer, Federal Rules of Civil Procedure, rule 12(e), 28 U.S.C.A. following section 723c—there were various motions for bills of particulars, one bill, indeed, being served pursuant to an order by consent on August 30, 1945, and a later motion being denied on November 2, 1945. On January 15, 1947, defendants made their

Alfred S. Julien, of New York City, for plaintiff-appellant.

Philip Wittenberg, of New York City (Wittenberg, Carrington & Farnsworth, of

motion for an order "striking this cause from the jury calendar of this Court" or, in the alternative, for orders separating the legal and equitable issues, the latter to be tried by the court without a jury, or directing trial by the court of the issue of violations of the Anti-Trust Act, with the issue of damage alone, if violation was found, to be thereafter referred to a jury. On January 20, 1947, the court made its order that the motion be granted "to the extent of striking this cause from the jury calendar of this Court," with a further provision giving plaintiff leave, "if he be so advised," to amend his complaint within ten days "so as to state a cause of action at law for damages for violation of the anti-trust laws of the United States." Plaintiff, however, took his appeal without adopting the court's suggestion. The individual defendants and the corporate defendant have separately made motions to dismiss the appeal, as not from a final order within the appellate jurisdiction of this court. We must consider these motions, therefore, before we pass to consideration of the appeal on the merits.

■ Clearly, as the order discloses, the district court did not intend it to be final and it cannot be so considered. Appealability therefore rests entirely upon the ground that it is to be considered in substance the grant of an injunction against an action at law and hence reviewable under 28 U.S.C.A. § 227, as interpreted by Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440, and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176. The Enelow case was decided before the union of law and equity achieved by the federal rules of civil procedure in 1938. It held appealable as such an injunction an order striking from the law side of the court, and thus from trial by jury, an action to recover on an insurance policy wherein the company had filed an affidavit of defense alleging fraud and praying cancellation of the policy. The Ettelson case presented essentially the same situation after adoption of the rules. The order it held appealable was that the counterclaim there filed should be heard and disposed of by the court sitting in equity prior to trial of the issue raised by the complaint and answer in the action at law. The Supreme Court refused to accept the contention that the union achieved by the federal rules had made the Enelow ruling obsolete, saying that the relief afforded by § 227 was not restricted by the terminology used, but looked to the substantial effect of the order made. Procedural experts have criticized this result as an unnecessary resurrection of procedural fictions, cf. 3 Moore's Federal Practice, 1947 Cum.Supp., § 39.01, pp. 29-35; but for our purposes we must of course accept it as gloss upon the statute, intended to promote prompt settlement in a case of the important question of form of trial.[1]

Defendants assert that, using preamalgamation analogies as we must under the Supreme Court's interpretation, we do not have here the case of a chancellor enjoining an action at law, but rather that of a chancellor making an order in an equity case already pending before him, as described in Beaunit Mills v. Eday Fabric Sales Corp., 2 Cir., 124 F.2d 563, 564. It

---

[1] The criticism has pointed out that although basic the jury-trial issue may either become moot as the trial proceeds or become so clearly required as to be settled unhesitatingly by the court by later order. Beaunit Mills v. Eday Fabric Sales Corp., 2 Cir., 124 F.2d 563, 565; 55 Harv.L.Rev. 861; 20 Tex.L. Rev. 619. Thus here the district court's suggestion of an amendment indicates no intent to deprive the plaintiff of a jury finally or arbitrarily. Apparently the court was looking for a separate statement of claims, which is largely a matter of trial discretion—even though there is no basis in modern procedure for finding a dichotomy of "causes of action" between law and equity. Cf. Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187; Munson Line v. Green, 2 Cir., 165 F.2d 321; Reeves v. Beardall, 316 U.S. 283, 285, 62 S.Ct. 1085, 86 L.Ed. 1478; Clark, Code Pleading, 2d Ed. 1947, 137, 146–148, 444, 463, 475; F.R. 10(b). And the grant of the right of interlocutory appeal does not settle all issues, e. g., jury waiver, as cf. Bereslavsky v. Caffey, 2 Cir., 161 F.2d 499, certiorari denied Caffey v. Bereslavsky, 68 S.Ct. 82, and Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862, certiorari denied Kloeb v. Bereslavsky, 68 S.Ct. 156, where mandamus was resorted to.

may well be that, if we were to hold the action predominantly equitable in character, our decision should be a dismissal of the appeal, rather than affirmance of the order. However important such a distinction might be for the science of the law, the parties would presumably view it as somewhat academic, since it would be but another way of stating our decision upon the merits. Obviously the question of jury trial is here inextricably intertwined with that of appealability. Since, as later developed, we view the action as one of legal aspect, entitling the plaintiff to a jury trial on demand, our case is clearly within the Ettelson ruling and the order is appealable. The Dramatists' Guild urges further that, whatever the situation as to the individual author defendants, the claim against it is only of an equitable nature to prevent its enforcement of its Minimum Basic Agreement. This it has developed as a defense in its answer, but it is not the theory of the complaint. That clearly charges this defendant, as well as others, with actionable wrongs under the Sherman Act, for which plaintiff can recover treble damages. It is of course the plaintiff's allegations which determine the case to be presented, and hence there is no ground for a differentiation among the defendants. Consequently both motions must be denied.

■ The question of jury trial, too, must be decided upon the allegations of the complaint. As pointed out in our earlier opinion, it is a lengthy and verbose document of some fifty-three paragraphs. It shows that the plaintiff, a lawyer, was induced to put $50,000 into the production of this musical play during its tryout stages at New Haven and Boston, preparatory to its being taken to Philadelphia and to New York City. Three of the four individual defendants are the authors of the play, and the fourth is the agent of the authors. To keep the show going, plaintiff was required to put up an additional $75,000 and to sign the Guild's Minimum Basic Agreement. This agreement limits contracts by both managers and authors to those made under its own extensive terms, including such requirements as that managers shall be in good standing with the Guild, that its scale of minimum royalties shall be observed, and that all disputes be submitted to arbitration in the manner therein provided. A dispute having arisen as to changes urged by plaintiff, the authors took the position that he had breached the Basic Agreement by making changes without the consent of the authors and hence that the production contract was terminated. The play being thus forced to close, the authors demanded arbitration of the dispute pursuant to the arbitration clause of the Basic Agreement. The complaint, in stating these asserted facts with detail, alleged in several places the great damage and injury plaintiff had suffered and his monetary losses. Finally in the fifty-third paragraph it alleged that he had been damaged in the amount of $140,000 as to each of the defendants except Hannon. (With Hannon, one of the authors, he had no dealings and therefore claimed only the right to produce the show.) These various allegations stressing financial damage, together with the absence of any stress or even mention of equitable rights or remedies, stamp the complaint proper as basically one for legal damages.

■ If, in addition, we turn to the prayers for relief for indications of the pleader's intent—though, as we pointed out before, Ring v. Spina, 2 Cir., 148 F.2d at page 653, these would not limit recovery at the trial in view of F.R. 54(c)—we must reach the same result. For the first three emphatically stress the same contention: First is a claim of $140,000 against each defendant except Hannon; second is the demand for this amount trebled to make $420,000; and third is an additional claim for a $1,500 deposit with the Guild, to be trebled to $4,500. The remaining prayers, except for the final general prayer for other and further relief, are either for declarations—obviously but gildings of the lily if damages are already being awarded—that the Minimum Basic Agreement is illegal and the plaintiff has the right to produce the show or for injunctions on matters of detail or of a temporary nature, such as the issue of compulsory arbitration so prominent on the previous appeal. True, one prayer is for a permanent injunction against interference by the three authors

with the production or reproduction of the show, although, as we pointed out, Ring v. Spina, 2 Cir., 148 F.2d 647, 653, the costly dispute which has arisen with the authors is likely to keep the matter of production of this play, particularly by the plaintiff, a lawyer and not a producer, within the realm of the academic. But the basic nature of the claim for damages for violation of the Anti-Trust Act to this complaint is, we think, quite clear.[2]

■ Such a claim, it is well settled, is triable by jury on timely demand of a party. Fleitmann v. Welsbach Street Lighting Co. of America, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505; Decorative Stone Co. v. Building Trades Council of Westchester County, 2 Cir., 23 F.2d 426, certiorari denied 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005; cf. Bigelow v. R K O Radio Pictures, 327 U.S. 251, 254, 66 S.Ct. 574, 90 L.Ed. 652. There seems only one avenue of possible escape from the conclusion that such trial must be accorded here. That would be through acceptance of the view advanced in some state courts, notably New York, Di Menna v. Cooper & Evans Co., 220 N.Y. 391, 115 N.E. 993, that the plaintiff, by uniting legal and equitable claims, has waived his right to a jury. But this is rationally unsound and practically undesirable, if not quite improper. Rationally there is no basis upon which to ground such a waiver short of resurrecting the ancient divisions now abolished to say that plaintiff has brought his "legal" claims into an "equitable" cause. This is contrary to that complete union and consolidation of all claims, legal and equitable, in a single civil action which the new rules not only permit, but encourage. Practically the thesis results in forcing the plaintiff to yield his jury-trial right if all his claims are to be presented properly in the single action.[3] Hence this conception of jury waiver has been repudiated under the fed-

eral rules. 3 Moore's Federal Practice 3010, 1947 Cum.Supp., 6, 22, citing cases such as Bruckman v. Hollzer, 9 Cir., 152 F.2d 730; Ford v. C. E. Wilson & Co., D.C.Conn., 30 F.Supp. 163; Elkins v. Nobel, D.C.E.D.N.Y., 1 F.R.D. 357; and Columbia River Packers Ass'n v. Hinton, D.C.Or., 34 F.Supp. 970, 978, reversed on other grounds 9 Cir., 117 F.2d 310, reversed on other grounds 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 (dealing with claims under the Sherman Act). See also Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225, 228; Ryan Distributing Corp. v. Caley, D.C.E.D.Pa., 51 F.Supp. 377; Bynum v. Prudential Life Ins. Co., D.C.E.D. S.C., 7 F.R.D. 585; Connell v. Bowes, 19 Cal.2d 870, 123 P.2d 456; Back v. People's Nat. Fire Ins. Co., 97 Conn. 336, 116 A. 603; Clark, Code Pleading, 2d Ed.1947, 106-110, 120-122.

■ Plaintiff's timely demand therefore entitles him to trial by jury and, since he does not appear to have specified particular issues, to such trial "for all the issues so triable." F.R. 38(c). Nevertheless, the court, "upon motion or of its own initiative," may find that some of the issues are not so triable and order them tried to the court. F.R. 39(a) (2). This does not contemplate some formal finding by the court, as is claimed; its simple order, made at any time necessary or desirable, is itself obviously the only finding required. And if the court so determines, it will be a simple matter, under the flexible procedure contemplated by the rules, for the judge presiding at the jury trial to decide any equitable issues at the same time and without delay. See Ford v. C. E. Wilson & Co. and other cases and authorities cited supra. In view of the delay caused by this appeal, the court may appropriately advance the case on its calendar for speedy trial.

Motions denied; order reversed.

---

[2] For the "basic issue test" of the jury-trial right, as explained by Professor Moore, 3 Moore's Federal Practice 3015, 3016, see Beaunit Mills v. Eday Fabric Sales Corp., supra, 2 Cir., 124 F.2d 563, 566.

[3] If he tries to avoid losing his right by bringing separate actions, he will probably be met with the contention that he is splitting his claims and that his first case to go to judgment is res judicata of the other. See cases collected Clark, Code Pleading, 2d Ed.1947, 475, 476.