CRANSTON PRINT WORKS *vs.* RODNEY F. DYER *et als.*

In a suit to reform a deed and mortgage it appeared that A. and B., the predecessors in title respectively of the complainant and respondents, were formerly owners of lands on opposite sides of a pond; that controversies had existed between them as to their respective rights in the pond; that B. had filed a bill in equity in which he claimed the right to the use and benefit of the water in the pond, and prayed to have A. enjoined from building a new dam which would raise the water in the pond; that A. and B. then made a contract by which B. agreed to sell to A. his land with the "water rights therewith connected," in pursuance of which A. purchased of B. and mortgaged back to him his land with the "water rights therewith connected;" that the mortgage was subsequently foreclosed; and that for nearly twenty years the deeds had remained unquestioned. The complainant also claimed that its predecessors in title have always been the exclusive owners of the entire water power of the pond, and denied the right of the respondents to use the water in the pond,

*Held*, that the question involved being that of the intention of A. and B. in using the term " water rights " in their agreement and conveyances, the fact of title could not be conclusive unless it was of so clear and unequivocal a character as to exclude all claim of right in the pond.

*Held*, further, that the term " water rights " in the agreement and conveyances meant the right to use the water for furnishing power, and as thus construed appeared to express the intention of the parties.

*Held*, further, that no case was shown for relief.

A court of equity can only make an instrument what both parties intended it to be, when a mistake is clearly and unequivocally proved.

BILL IN EQUITY to reform a deed and mortgage. Heard on pleadings and proofs.

In 1872 the A. & W. Sprague Manufacturing Company, the complainant's predecessor in title,. and Rodney F. Dyer, Senior, the respondent's predecessor in title, were the owners of land on opposite sides of the Cranston Print Works Pond. April 29, 1872, the agreement referred to in the opinion of the court was made between the parties, whereby Dyer agreed to sell to the A. & W. Sprague Manuf. Co. his land " with all the buildings and improvements thereon and water rights and appurtenances therewith connected." June 1, 1872, Dyer conveyed the land to Albert S. Gallup, who on the same day mortgaged it back to Dyer, and then on the same day conveyed it to the A. & W. Sprague Manuf. Co., each of the deeds purporting to convey the land with the " water rights and appurtenances therewith connected." The mortgage was subsequently foreclosed. The bill seeks to reform Dyer's deed to Gallup and Gullup's mortgage to Dyer. See *Cranston Print Works* v. *Dyer*, 18 R. I. 526.

*September* 20, 1895. STINESS, J. This is a bill to reform a deed and mortgage covering the water rights in the Print Works pond. The complainant claims that its ancestors in title have always been the exclusive owners of the entire water power of the pond ; that the defendants and their ancestors in title have never owned, used or had the right to use the water of the pond, and, hence, when the farm of Rodney F. Dyer, Senior, was bought, and the mortgage back was given by the complainant's predecessor in title, it was not intended that the conveyances should cover any rights

other than those of a riparian owner.  This is the first issue raised in the case.

The question before us is not the question of title in fact, but that of the intention of the parties in using the term "water rights," in the agreement and conveyances.  The fact of title would undoubtedly throw light upon the meaning of the parties if it appeared that one party had a clear title to the water power of the pond, and that the other party had never claimed any right therein.  A presumption would then arise that the term "water rights" was intended to refer only to ordinary riparian rights, and not to any right in the pond as a source of power.  But, on the other hand, although the title to the pond might be in one party, yet if it should appear that the other claimed title therein, an equally strong presumption would arise that the party intended to grant all the right that he claimed ; and so the construction of the deed would depend not so much upon the fact as upon the claim of title.  We are not, therefore, called upon to decide the fact of title, for such decision would not be conclusive upon the intention of the parties to the conveyances, unless it was so clear and unequivocal as to exclude all claim of right in the pond itself.  It is not of that clear and unequivocal character.  If it was necessary to decide the question of fact, we should find it difficult to say that the complainant's exclusive title to the whole pond is established beyond question.  Certainly, the pond originated with mutual rights in the owners on both sides.  But let us assume that the Spragues were, at the time of the agreement, the sole owners of the pond.  We then find that they and Dyer, opposite owners on the pond, had controversies about their respective rights ; certainly as to putting on flashboards ; as to repairing the westerly part of the dam, and as to taking ice from the westerly part of the pond, beyond the centre line.  Mr. Amasa Sprague testifies that these controversies related only to flowage and the right to enter upon Dyer's land ; while testimony offered by the respondents shows that Dyer claimed to be the owner of the pond to the middle of the channel, and to the same extent an owner of the dam.

As there has been nothing on Dyer's side requiring power for many years, the controversy would not be likely to draw that point in question, and it is therefore probable, as Mr. Sprague says, that their talk was about flowage and the right to enter on Dyer's land, at the west end of the dam, to repair the abutment.   But, in 1870, Dyer filed a bill in equity against the A. & W. Sprague Mfg. Co., alleging that he was the owner of the land to the middle of the river whereon the defendant had a dam and pond and the right to flow to a certain extent, and that he had long enjoyed certain water rights adjoining said pond, and was the owner of the soil under the water of said pond and river to the middle thereof, and had the right to have free access to said pond and river ; that the defendant, to deprive him of the use and benefit *of said water* and of lands adjoining said water, was about to build a new dam which would raise the water of the pond, for which Dyer prayed an injunction.   Exactly what Dyer claimed by this bill is not very clear.   But while it alleges injury to his rights adjoining the pond and the ownership of the soil under it, it also, impliedly at least, makes claim to the use and benefit of the water.   The bill was not answered, and it resulted in the purchase of Dyer's land under the agreement and conveyances in question.   The agreement was drawn very carefully and very comprehensively.   It was evidently intended to cover all rights, both in the land and in the pond, and provided for immediate entry, after the execution of the deed, for alteration of the dam to enable the A. & W. Sprague Mfg. Co. " to use the water rights herein agreed to be granted."   This clause was construed in the case of *Dyer v. Cranston Print Works*, in a rescript[1] filed July 7, 1893,

---

SUPREME COURT.
APRIL TERM, 1893.

[1] PROVIDENCE, Sc.

RODNEY F. DYER,
    *vs.*                } Equity, No. 3299.
CRANSTON PRINT WORKS,

*Rescript.*

Filed July 7, 1893.

The respondent bases its motion for a re-argument of the motion for the

to mean "not merely the use of the water for domestic or farm purposes, but water rights connected with the dams, or rather to be used in connection with the dams when the requisite alterations of them had been made, or, in other words, the right to use the water for furnishing power." We see no reason to doubt the correctness of that construction. The terms of the agreement about water rights would be quite unnecessary if they embraced only riparian rights, for, of course, Dyer could not claim these after he had sold the land. They would vest in the grantee under his deed. We cannot think that so accurate a conveyancer as the one who drew the papers, who was also the counsel for the defendant in that case, would have used such terms simply out of abundant caution. It seems more reasonable that they were intended to cover rights in the water power which might exist or be claimed apart from any title in the land covered by the dam or pond. *Matteson* v. *Wilbur*, 11 R. I. 545.

---

framing of issues to the jury, on the claim that the term "water rights" as used in the contract between Rodney F. Dyer and the A. & W. Sprague Manufacturing Co., the deed from Dyer to Gallup and the mortgage from Gallup to Dyer, is equivocal, and, therefore, open to explanation by parol evidence.

For the reasons stated below, we do not think that the term is equivocal; but if it were, the parol evidence which the respondent proposes to offer does not tend to explain it. It is to the effect that the term, though broad enough to include all water rights, did not in fact include the right to use the water for the purpose of developing power, since, as it contends, Dyer did not possess that right, but it belonged exclusively to the A. & W. Sprague Manufacturing Co. Though parol testimony may be resorted to when a deed is ambiguous so as to admit of different constructions, or when it contains clauses which are repugnant, or when the proceeding is to reform a deed, we know of no principle which will permit its introduction for the purpose of showing that a right is not included in a grant where the language of the grant is broad enough for its inclusion. To do so would be to vary the grant by parol evidence.

Moreover, the contract between Dyer and the A. & W. Sprague Manufacturing Co. clearly indicates the character of the water rights intended to be conveyed. After reciting that Dyer, in consideration of $150,000 to be paid by the A. & W. Sprague Manufacturing Co., agrees to sell to it his farm containing about 100 acres, &c., "with all the buildings and improvements thereon and water rights and appurtenances therewith connected," and after reserving the burial lot and a right of way to it, and the right of Dyer to occupy the farm for a limited period, the agreement provides that the A. & W. Sprague Manufacturing Co., after the execution of the deed, may enter on such parts of the farm as

However the Spragues may have regarded such a claim of right, and however the fact of the existence of the right may have been, it seems to be clear that the agreement and conveyances were intended to cover them.   If this be so, we cannot reform the instruments on the ground of mutual mistake.   It is not enough to show that one party intended something different.   The power of the court is only to make an instrument what both parties intended it to be, when the mistake is clearly and unequivocally proved.   *Allen* v. *Brown*, 6 R. I. 386.   Nor is it enough to show that Dyer had no title to convey.   If he thought he had, and his deed was drawn accordingly, we cannot say that he would have taken the mortgage as security without including in it all the rights which he supposed he owned.   If it was not intended to mortgage back rights in the pond, because none were actually conveyed, the mortgage could easily have been drawn to ex-

---

may be convenient or necessary to enable them *to make alterations of their dams to enable them to use the water rights agreed to be granted.*   The water rights, then, contemplated, were not merely the use of the water for domestic or farm purposes, but water rights connected with the dams, or rather to be used in connection with the dams when the requisite alterations of them had been made, or, in other words, the right to use the water for furnishing power.

The contract also contained a stipulation that in case Dyer should require a mortgage for a portion of the purchase money not paid at the delivery of the deed, the A. & W. Sprague Manufacturing Co. should have the right to name the grantee to take the deed and execute the note and mortgage.   Under this stipulation, Gallup was named as grantee by the A. & W. Sprague Manufacturing Co.

The deed to Gallup in pursuance of the contract purports to convey "All that certain tract of land with the buildings and improvements thereon and water rights and appurtenances therewith connected," and expressly refers to the contract as follows, viz : "Meaning and intending hereby to convey the premises named and described in the contract between the A. & W. Sprague Manufacturing Co. and this grantor, dated," &c.

The mortgage from Gallup to Dyer in pursuance of the contract purports to convey the same tract of land, and the water rights and appurtenances therewith connected, conveyed in the deed from Dyer to Gallup, describing it and defining its boundaries in the same language and expressly referring to the deed from Dyer.

It thus appears that the term water rights as used in the contract and conveyances in question clearly includes the right to the use of the water to furnish power and is not equivocal.   Consequently the basis of the motion fails and it must be denied and dismissed.

clude them. Even without the preceding agreement and deed, the owner of the pond had the right to include in the mortgage an interest in the pond as a source of power, and there is nothing to show that Dyer did not understand that it was so included. For nearly twenty years the deeds remained on record unquestioned ; the Print Works estate was sold and conveyed to the Union Company, to the Cranston Bleaching, Dyeing and Printing Company and to the complainant, by deeds, the first subject to the Dyer mortgage, and the last two, after the foreclosure of the mortgage, bounding on the same division line as those of Dyer's deed of 1872, and limiting the water rights to those appurtenant to the estate conveyed ; but during all this time there was no effort to correct the mistake, if one had been made. While it is undoubtedly true that the owners of the Print Works estate may have supposed that they owned all the water of the pond, still if a mistake had been made in Dyer's conveyances the fact must have been known, for all the parties to them were then living, and, upon the assumption of a mistake, it is almost incredible that they would have been allowed to lie with no effort to correct it. We feel obliged to hold that the complainant does not make a case for relief upon the ground of mutual mistake.

It is further claimed that the complainant has an easement in the water of the pond appurtenant to its estate, which did not pass under the general language of the mortgage. This is not a question which arises upon a bill to reform the mortgage. The question was considered in *Dyer* v. *Cranston Print Works*, 17 R. I. 774, and the particular clause of the mortgage was construed in the subsequent rescript in that case. Undoubtedly, the easement might have been reserved, expressly or impliedly, but the question now between the parties is that of the legal effect of an express grant. We do not see that it can enter into the decision of this case, unless it should be to say that the mortgage does not need to be reformed because it covers no rights in the pond, and also that in spite of the grant, the whole pond is appurtenant to the Print Works estate, and so impliedly reserved out of the

grant. That point, however, we consider to have been decided in the previous suit, as above stated.

*James M. Ripley & Joseph C. Ely*, for complainant.