JENNIE SHAPIRO *vs.* ALBANY INSURANCE COMPANY OF NEW YORK.

JENNIE SHAPIRO *vs.* THE LAW UNION AND ROCK INSURANCE COMPANY, LTD.

MARCH 4, 1936.

PRESENT: Flynn, C. J., Moss, Baker, and Condon, JJ.

CONDON, J.   These are bills in equity brought to reform two fire insurance policies issued to the complainant as owner, instead of as mortgagee, of certain real estate on Maple avenue, Oakland Beach.   The causes were heard by a justice of the superior court on the prayer for reformation on the ground of mutual mistake.   In each cause the trial justice granted the prayer and filed a rescript of his decision. Decrees were entered in accordance therewith and from said decrees the respondents have appealed to this court.

The respondents contend that the decisions of the trial justice are against the law and the evidence and the weight thereof and that they do not do justice between the parties. We have carefully examined the record and we think that the evidence fails to support the respondents' contentions. On the contrary, the findings of the trial justice are amply supported by the evidence.   The respondents do not deny that they intended to issue to Jennie Shapiro the policies covering the property designated therein, but they deny that they agreed to insure the complainant's interest as mortgagee.   The complainant contends that the respondents did so agree when the policies were ordered by her, through her agent, George R. Elliott, who went to the office of respondents' agents, Gallivan & Co., and gave said order.

Elliott testified that at complainant's request he gave this order to respondents' agents on a small piece of paper, which contained a description of the property to be covered by the policies and the names of Antonio Cantone and Filomena Cantone, as owners, and Jennie Shapiro, as mortgagee.   Helen Gallivan, the clerk in the insurance agent's office, testified that she took the order from Elliott

but did not recall receiving from him such a paper. How she received the information on which to issue the policies, if she did not obtain it from such paper, does not appear as, on cross-examination, she could recall no conversation with Elliott on the day he came to the office concerning the property covered by the policies, or anything else. Nevertheless, she insisted that she must have taken the order from him as it appears in the order book because, as she said, the order is in her handwriting in the order book. On this testimony, the trial justice found that the order had been given as testified to by Elliott and that in some way a mutual mistake had been made in designating Jennie Shapiro as owner instead of as mortgagee. In reaching this finding, he stated that the evidence of the complainant to this effect was "positive" whereas the evidence of the respondents to the contrary was "negative" and rested solely upon inference and recollection. He states in his rescript that there was no evidence of fraud or other improper. motive in the case, and there was none. These findings are entitled to great weight and should not be set aside unless they clearly fail to do justice between the parties. *Simeone* v. *Antonelli*, 52 R. I. 41; *Dwyer* v. *Curria*, 52 R. I. 264.

The evidence clearly was conflicting although counsel for respondents states in his supplemental brief that the question was one of drawing an inference from undisputed facts and testimony. In making this contention counsel shifts his position from the one he assumed in the superior court. According to the transcript he argued to the trial justice then as follows: "Now, here we have contradictory testimony—the testimony of Mr. Elliott that he went to the office of Gallivan & Company. . . . We have the testimony of Mr. Gallivan and his sister." etc. After contrasting their testimony, he adds: "Now it seems to me that with the testimony in that position, if the court is unable to decide as to the credibility of witnesses or the veracity of witnesses, the Court would not have clear and

convincing testimony." Plainly in the trial court respondents' counsel not only thought there was a conflict in the evidence but argued pointedly on that assumption. The difficulty confronting him now is that the trial justice was able "to decide as to the credibility of witnesses or the veracity of witnesses" and thus was able to come to a decision on the conflicting testimony, so that now on appeal to this court counsel for respondents is driven to the necessity of convincing us that the evidence is undisputed in order to avoid the effect of the adverse decision of the trial justice. Our examination of the transcript convinces us to the contrary and therefore there is no room in the instant causes for applying the rule of *Stiness* v. *Brennan*, 51 R. I. 284, *Raferty* v. *Reilly*, 41 R. I. 47, and *Lisker* v. *Emery*, 54 R. I. 190, upon which respondents' counsel seeks to rely.

The conflict in the evidence is quite clear to us from a reading of the testimony of the two chief witnesses, George Roy Elliott for the complainant, and Helen F. Gallivan for the respondents, as to what occurred at the office of Gallivan & Company, agents for the respondents, on August 13, 1928, the day the insurance policies were ordered by Elliott, as agent for the complainant. Elliott testified that he gave the order by handing to the clerk who waited on him a small piece of paper containing a description of the property to be covered and the names of Antonio Cantone and Filomena Cantone, as owners, and the name of Jennie Shapiro, the complainant, as mortgagee, and that this order was copied into the order book in his presence, although he did not see what the clerk wrote in the book. Helen F. Gallivan, the clerk who took the order, testified on direct examination that she did not receive such a piece of paper but, later, on cross-examination, said she did not recall receiving it. Her testimony based on her recollection was, therefore, in conflict with that of Elliott.

The complainant testified that she requested Elliott to obtain insurance of her interest as mortgagee in this property at Oakland Beach. As the complainant did not know

the correct spelling of the names of the owners, Elliott testified that he obtained the correct names from a neighbor of the Cantones, a Mrs. Rossi, and that at that time he put the names down, with the name of Jennie Shapiro as mortgagee, on the small piece of paper which he handed in at the office of the respondents' agents. We are not confronted here with a situation like that in *Stiness* v. *Brennan, supra,* but rather with the usual case of a review of findings of fact of the trial justice on conflicting testimony as in *Gaynor* v. *Wax,* 50 R. I. 194, and many other similar cases which we need not cite here.

Objection is made, however, that the trial justice, in weighing the evidence and deciding for the complainant, has not done justice between the parties because such evidence is not sufficient to prove mutual mistake. If the evidence is not clear and convincing that such a mistake was made, the complainant cannot recover. But the trial justice had pointed out to him by respondents' counsel the necessity for such clear and convincing evidence and yet has accepted the complainant's evidence as having that necessary probative quality. Unless he is clearly wrong in this, his findings should not be set aside.

From our examination of the record, we cannot say that these findings are clearly wrong. A correct decision hinges on what occurred in the office of Gallivan & Company on August 13, 1928. We have on the one hand the explicit and affirmative testimony of Elliott that he gave to the clerk an order for this insurance on a piece of paper with the names of the insured and their interests in the property to be covered by the policies, as well as its location, written thereon. All necessary information for entering the order was on that paper. He testifies positively why he had the names on this slip of paper and who gave him the names of the Cantones. He says he stood at the counter in the office of Gallivan & Company and saw the clerk copy from the piece of paper he had handed to her.

On the other hand, Miss Gallivan testifies that she did not receive such a slip of paper. She says she took the order but she has no recollection of what occurred between herself and Elliott. She is sure she took the order from him because of the fact that the entry in the order book is in her handwriting, and that when Elliott came to the office on business, she always waited on him if she was there. Several times in the course of her examination she assumes that a certain thing must have occurred in a certain way because of an entry in the order book. After a careful examination of her testimony, we have come to the conclusion that she has no present recollection of the transaction with Elliott, and that her denial of receiving the slip of paper from him at the time she took the order is nothing more than a conclusion which she has reached in her own mind, based upon the entry in the order book in her handwriting on the day in question.

The testimony of James J. Gallivan, the only other witness in behalf of the respondents, is inconsequential and has little, if any, bearing upon the issue. The testimony of the complainant Shapiro is consistent with that of Elliott and tends to support his testimony as to obtaining the names of the Cantones. We think, therefore, that the trial justice was justified in holding that the weight of the evidence so clearly preponderated in favor of the complainant as to warrant a decree for reformation of the policies.

The respondents, however, contend here, and contended in their argument in the superior court, that a mere preponderance of the evidence is not sufficient. The proof, they say, must be clear and convincing to justify in equity the reformation of an instrument. We find no fault with this statement of the law. Counsel in his brief interprets this to mean that the finding cannot rest upon the weight of the evidence, as the trial justice rested his decision in the instant causes. This is an erroneous assumption. It stretches the rule too far. It is true that a slight preponderance in the oral testimony in favor of the com-

plainant in a case of this kind is not sufficient to overcome the written evidence. The trial justice, however, did not base his decision on a slight preponderance in the evidence in favor of the complainant but rather on the character and weight of all the evidence, which he said was positive on the one side and merely negative on the other. Where, as in this case, there is so great a degree of preponderance in the oral testimony for the complainant that it outweighs, in the mind of the court, the written evidence and the testimony in support of it for the respondents, there is such evidence on behalf of the complainant as may be termed clear and convincing.

What degree of proof is indicated by the words "clear and convincing?" Do they mean proof beyond a reasonable doubt as in criminal cases or do they suggest proof by a fair preponderance of the evidence as in civil cases? Unquestionably they do not indicate that the proof of mutual mistake must be beyond a reasonable doubt. In *Allen* v. *Brown*, 6 R. I. 386, it was said that the proof must be clear and unequivocal but nowhere in that opinion does the court say that the proof must be beyond a reasonable doubt. The word "unequivocal" is no stronger than the word "convincing," and indeed means practically the same thing, namely, that the evidence is such that the mind has no difficulty in reaching a point of decision. If the expression means anything, it means that the trial justice must be convinced to a degree beyond that attained by a slight preponderance of evidence but not necessarily to the point of being convinced beyond a reasonable doubt. What is required by these words is a closer scrutiny of the evidence than in ordinary civil cases. *Peterson* v. *Bauer's Estate*, 76 Neb. 652. Perhaps we cannot do better than to quote what was recently said along the same line in *Back* v. *People's Nat. Fire Ins. Co.*, 97 Conn. 336, 116 A. 603, which was a case to reform an insurance policy where the insured was misdescribed in the policy as owner of the land. There, after declaring that the rule of proof in the action did not

differ from that in other civil actions, the court said: "No uniform standard of proof can be required by law in this class of cases, for the presumption in favor of the written evidence of the agreement varies according to the facts of the particular case. The plaintiff must, as in all civil cases, establish his affirmative allegations by a fair preponderance of the evidence; and in this class of cases, as in those where fraud is alleged, the preponderance of evidence must be clear and convincing. In this case, for example, it turns out after the loss that the policy is wholly void on its face by reason of a fatally defective description of the subject-matter of the insurance. Since the parties could not mutually, intentionally, and in good faith have agreed to misdescribe the subject of insurance in such a way as to make the policy self-destructive, the policy is in that particular inexplicable except on the theory of deception, inadvertance, or mistake on the part of one or both parties."

While the trial justice in the instant causes did not in his rescript employ the expression "clear and convincing," we understand his expression, that the evidence on one side was "positive" and on the other "negative," to mean that the complainant's proof clearly overcame the written evidence and oral testimony of the respondents and that he was convinced that there had been a mutual mistake.

It is well known that positive testimony has a higher probative value than mere negative testimony, and it has been said that: "Whenever it can be perceived that a positive witness is guilty of perjury unless his statement is true, while a negative witness may be honestly mistaken, the issue should be found in favor of the former if the witnesses are of equal credibility." *Bennett* v. *Robertson*, 177 A (Vt.) 625, citing 10 R. C. L. 1010. See also *Barclay* v. *Hartman*, 43 A. 174, 2 Marv. Del. 351. Having so regarded the testimony of Elliott on the one hand and Miss Gallivan on the other, the trial justice in the instant causes must have been clearly convinced that the evidence established proof of a mutual mistake. To think otherwise is

to speculate on whether or not the trial justice applied the correct rule to the evidence before him merely because he did not use the words "clear and convincing" in his rescript.

It appears from the evidence that there was ample justification for reforming these contracts of insurance. The evidence is uncontradicted that the respondents intended to and did issue policies of insurance against fire covering the real estate described therein. There is no dispute that the insurance was at the order of the complainant and for her protection. There is no evidence whatever that the respondents would have refused to insure the complainant's interest as mortgagee in this property. The only difficulty occurs over the misdescription of the complainant as owner whereas she should have been· described as mortgagee.

It is hinted that one of the respondents had an objection of some kind to insuring the Cantones as owners, but there is no evidence of it in the record. There is evidence that sometime previous to the issuing of the policies under consideration here the Law Union & Rock Ins. Co., Ltd., one of the respondents, cancelled a fire insurance policy on the real estate in question to the Cantones as owners. Why this was done does not appear. The trial justice would not have been justified in surmising because of this cancellation that the respondents would not insure the complainant's interest, nor are we justified in doing so. As we read the record, there is no reason anywhere therein to treat this matter differently from the manner in which it was treated by the trial justice.

There is reputable authority for decreeing the reformation of a fire insurance policy under just such circumstances as existed in the causes before us. *Houlden* v. *Farmers' A. C. F. Ins. Co.,* 188 App. Div. 734, 177 N. Y. Supp. 286, affirmed without opinion in 231 N. Y. 636. In that case the plaintiff, without reading, signed an application for fire insurance on property in which her interest was described as owner whereas she was actually the mortgagee. The

plaintiff prayed for reformation on the ground of mutual mistake and in granting the prayer, the court said: "There was a mutual mistake. The intention of each was to insure plaintiff's interest, but this was incorrectly described, both in the application and the policy. . . . Under such circumstances, equity will decree a reformation and a recovery upon the policy as reformed. (citing cases) If the mistake is not mutual, still plaintiff is entitled to recover, without reformation, for defendant is estopped from denying the validity of the policy."

In *Schuessler* v. *Fire Insurance Co.*, 103 App. Div. 12, 92 N. Y. Supp. 649, affirmed without opinion in 185 N. Y. 578, cited by the New York court in the above case, there was a warranty in the policy that the insured premises were occupied exclusively by two families, whereas they had always been occupied in fact by three families. The evidence was that the insured did not look at the policy when he received it because he trusted his agent whom he had retained to procure the insurance for him. The facts in this case bear a close resemblance to the case before us in that the court was called to pass upon the plaintiff's reliance upon its agent, and also the nature of the negotiation between such agent and the agent of the insurance company in transacting the business of writing the policy. The court granted the prayer for reformation, and, on appeal, the appellate division, sustaining the decision of the lower court, had this to say, speaking through INGRAHAM, J.: "assuming that Fishbeck was the agent of the plaintiffs and that Weed & Kennedy were the agents for the defendant, it is quite clear that the insertion of this warranty in the policy was the mutual mistake of the agents of the respective parties, or of the agent who was acting for both the plaintiffs and the defendant. In either event, the insertion of this clause in the policy was the result of a mistake of fact as to the actual occupation of the building, which justified a reformation of the policy. What the plaintiffs wished, and what their agents intended to secure, was a policy of

insurance covering this particular building. . . . The plaintiffs having paid the premium to obtain this insurance, which was accepted by the insurance company, it would be quite unjust to allow the insurance company to escape responsibility because of a mistake of this character, which the evidence shows was purely a mistake of fact."

After a careful examination of the evidence, we do not feel justified in disturbing the findings of the trial justice and reversing his decisions. Whether the evidence is clear and convincing is, in the first instance, a question for the trial justice. It is not necessary that he use those particular words to indicate his appreciation of the evidence before him; and mere employment of the words in his rescript would not be sufficient to constitute the evidence clear and convincing if it was palpably lacking in that necessary quality. On appeal, this court will look at the evidence and, if it appears that the trial justice has clearly erred in his findings of fact, will remand the cause for entry of a decree in accordance with the proper view of the evidence; but this will only be done in compliance with the principles laid down in the many cases in which we have stated repeatedly that the findings of fact of a trial justice will not be set aside unless they are clearly erroneous or fail to do justice between the parties. *Prudential Ins. Co.* v. *Tutalo,* 55 R. I. 160; *North Shore Dye House* v. *Rosenfield,* 53 R. I. 279; *Hurst* v. *Brayton,* 43 R. I. 378; *Nichols* v. *Hoxie,* 33 R. I. 77; *Simeone* v. *Antonelli, supra; Dwyer* v. *Curria, supra.*

In the instant causes, as we have stated above, the findings of fact of the trial justice are not clearly erroneous, and, in our opinion, to set them aside because of doubt as to whether the trial justice applied the correct rule to the evidence before him, would be an unwarranted disregard of our own rule laid down in the above-cited cases. That rule requires us to be convinced of his error before we order a reversal. To state it in another way, the respondents must fail on appeal unless they can convince us that the

trial justice is clearly wrong, and not merely that there is a doubt of the correctness of his decision.

FLYNN, C. J., concurs in the opinion of CONDON, J.

BAKER, J. In disposing of these causes, I am unable to agree with the conclusions reached in the foregoing opinion for the following reasons. In a bill in equity, brought to accomplish the reformation of a written instrument because of mutual mistake, and where no fraud is involved, it is well settled that the complainant to secure a decree in his favor must prove that the instrument as existing does not express the real intent and purpose of both parties, and that the mistake which brought about this result was mutual. It must also appear that the minds of the parties had already met in a definite agreement or understanding, but that, in having it put into final written form, both did what neither intended. Further, the burden is on the complainant to establish these matters by clear, convincing and unequivocal proof. In reforming a written instrument, the court is exercising one of its highest equity powers, and the obvious reason for the strictness of these holdings is that the court will not undertake to make by reformation an agreement which one of the parties did not intend.

These general principles were early recognized by this court. In *Diman* v. *The Providence, Warren & Bristol R. R. Co.*, 5 R. I. 130, in dismissing a bill to reform a stock subscription, the court said: "A court of equity has no power to alter or reform an agreement made between parties, since this would be in truth a power to contract for them; but merely to correct the writing executed as evidence of the agreement, so as to make it express what the parties actually agreed to. It follows, that the mistake which it may correct in such a writing must be, as it is usually expressed, the mistake of *both* parties to it; that is, such a mistake in the draughting of the writing, as makes it convey the intent or meaning of neither party to the contract. If the court were to reform the writing to make it accord

with the intent of one party only to the agreement, who averred and proved that he signed it, as it was written, by mistake, when it exactly expressed the agreement as understood by the other party, the writing, when so altered, would be just as far from expressing the agreement of the parties as it was before; and the court would have been engaged in the singular office, for a court of equity, of doing right to one party, at the expense of a precisely equal wrong to the other."

In discussing the question of proof, this court in *Allen* v. *Brown*, 6 R. I. 386, a bill brought to reform the grant of a seaweed privilege, used the following language at page 397: "Accordingly, in this country, as well as in England, although evidence inferior in its general nature is received for the purpose of correcting an undesigned variance between the real and the written contract, the courts refuse relief unless in cases clearly and unequivocally proved to require it; and hold, that it would be at least exceedingly difficult to prove the mistake, if the answer denied it, and there was nothing to rely upon but the recollection of witnesses." To the same general effect are *Cranston Print Works* v. *Dyer*, 19 R. I. 208; *Fehlberg* v. *Cosine*, 16 R. I. 162.

In other jurisdictions the same rules of law are applied. *Mead* v. *Westchester Fire Ins. Co.*, 64 N. Y. 453; *Back* v. *People's Nat. Fire Ins. Co.*, 97 Conn. 336; *Spexarth* v. *Rhode Island Ins. Co.*, 245 Pac. (Or.) 515; *Kanofsky* v. *Woerderhoff*, 211 Ia. 1175; *Hearne* v. *Marine Ins. Co.*, 20 Wall. 488; *Snell* v. *Insurance Co.*, 98 U. S. 85; *Philippine Sugar Estates* v. *Philippine Islands*, 247 U. S. 385.

In the above cases the evidence presented was considered, and where, in the judgment of the court, it showed clearly and convincingly a meeting of the minds of the parties, but by mutual mistake failure to fully and properly express in the writing the agreement reached, then relief by way of reformation was granted, otherwise it was denied.

In the instant causes, the trial justice determined that the "weight of the evidence" supported a finding that there

had been a mutual mistake in designating, in the two policies in question, the complainant's interest in the burned property as that of owner, when it should have been that of mortgagee. He made no definite finding on the issue of whether or not the parties had come to an agreement that policies should be issued, describing the Cantones as owners, and the complainant as mortgagee, of the property insured; and such a finding must be inferred, if it can be, from the holding that there had been a mutual mistake. This situation makes it necessary for us to determine this question from the testimony introduced.

Further, while ordinarily the finding of a trial justice on a question of fact is entitled to great weight, by reason of his having seen and heard the witnesses, and will not be disturbed by this court unless clearly wrong, in the causes at bar this general principle can not be applied because of doubt and uncertainty as to whether he made use of the proper rule in weighing the evidence in these bills in equity for reformation of written instruments. As we have indicated, it is required, in causes such as these, that the complainant sustain the burden of proof by clear and convincing or clear and unequivocal evidence. In the present causes, it is at least very doubtful whether the trial justice applied this test in weighing the evidence. In fact, in my judgment, the indications are that he did not. It is contended that his use of the phrases, "positive testimony" and "negative testimony," in characterizing the evidence of the complainant's witness and of the respondents' witness respectively, can be given that meaning. To my mind, this conclusion does not follow. In this situation, the findings of fact by the trial justice herein can not be given their usual weight, and this court should consider and weigh the evidence.

The opinion of Mr. Justice CONDON refers in some detail to the vital testimony in these causes, and repetition is unnecessary. This evidence, which is conflicting, is furnished by the complainant's agent, who gave the order for

the insurance, and by the insurance agent who received the order. The latter testified that the order was given her verbally only, and that she immediately wrote it as given in the order book. This entry lists the complainant as the owner of the property, and not as mortgagee. The complainant's claim herein rests to a large degree on the alleged showing by her agent to the insurance agent, at the time the order was given, of a certain paper, said to contain the names of the owners of the property and that of the complainant as mortgagee. While portions of the testimony of the insurance agent were based on her general practice and custom in taking orders for insurance, rather than on direct recollection of this particular order, nevertheless she was positive as to the fact that she saw no such paper, did not copy from one into her order book, and received nothing of such a nature from the complainant's agent. As to this alleged memorandum, the latter testified he did not know what became of it after the order was given.

There is, also, evidence that about seven months prior to the placing of the order involved herein, two insurance companies, one of which is a respondent in these present proceedings, ordered cancelled, through the same office in which the order before us was placed, policies on the same property, made out in the name of the same owners, and with the complainant designated as mortgagee. No testimony was introduced showing any change of circumstance between the date of cancellation and that of the new order. This evidence bears on the probability of the insurance agent, with knowledge of this previous action on the part of the insurance companies, agreeing with the complainant's agent that the new policies should issue in exactly the same form as those which had been cancelled at the request of the companies; and there is no direct evidence that she did so agree. The respondents' contention seems reasonable, that the agent taking the order did what she was requested to do and what she intended to do, namely, have the new policies issued in the name of the complainant as owner and not as mortgagee.

Even if the testimony of the complainant's agent be accepted as accurate, the most reasonable conclusion from all the evidence on the subject seems to be that the insurance agent did not agree to have policies issued in the form applied for. When she entered in the order book the order for insurance to be issued to the complainant as owner, she did so in the belief, however mistaken it may have been, that the complainant's agent had so ordered. Later, when the firm of which she was a member selected the respondent companies to be the insurers, and designated the amount of the risk each was to assume, the respondents then first came into the matter. At that time, the firm understood that the complainant had asked for insurance as owner of the property to be insured. If so, it can not be found that either of the respondents ever agreed, or even understood, that a policy was to be issued in which the Cantones were to be described as owners and the complainant as mortgagee. Therefore the complainant and the respondents had very different ideas of what sort of policies should be issued, and there was never any meeting of minds, and no mutual mistake occurred when the policies were issued and accepted.

Upon a consideration of all the testimony, I am of the opinion that the complainant has failed to show clearly, convincingly and unequivocally that there was a mutual mistake, or that the minds of the parties had met in a definite agreement regarding the insurance, to which the present policies should be made to conform. In my judgment, therefore, the complainant is not entitled to any relief by way of reformation.

In *Travelers' Ins. Co.* v. *Henderson*, 69 F. 762, the court dismissed an action brought to reform a policy of accident insurance, the issue being whether the policy should have contained a provision covering death by an intentional act, and in so doing used the following language which seems pertinent to the situation as disclosed by the evidence in the present causes: "The rule referred to is so well settled

that it may be safely asserted that a court of equity has no right to correct an alleged mistake in a written agreement, on the strength of testimony purely oral, if the testimony is to such extent uncertain, equivocal, or contradictory as to leave the fact of mistake open to doubt. Moreover, a court of equity ought to be especially cautious in altering the provisions of a written contract where it has been in force for a considerable period before an attempt is made to reform it, and the parties thereto have in the meantime had ample opportunity to become acquainted with its provisions, and an event has also occurred which renders a change in the terms of the contract of vital importance to the person who is seeking to reform the instrument."

Moss, J., concurs in the opinion of BAKER, J.

PER CURIAM. This court having divided evenly, the appeal of the respondent in each cause is therefore denied, the decree therein appealed from is affirmed, and the causes are remanded to the superior court for further proceedings.