DECISION
This case was heard by the Court without intervention of a jury from January 13 to 16, 2003. The cases were consolidated for trial.
 TRAVEL OF CASE
The case of Michael DeSantis v. Imperial Casualty and IndemnityCompany (PC/97-3238) was heard before a justice of this Court and a jury. An award was made for Michael DeSantis (DeSantis) and payment of the judgment stayed until the resolution of a coverage question raised in PC/91-2585.
The complaint of DeSantis in the tort action was against Norbell Realty Corporation (Norbell) only, not against Amitie Bellini (Bellini). By the time Norbell forwarded the summons and complaint to Contractors Insurance Services (CIS), the local agent and then to Anexco, and then to Imperial Casualty Indemnity Company (Imperial), default had already been entered.
Imperial, through the adjusting service K. MacDonald Associates (MacDonald), issued a reservation of rights on the basis of late notice, designated trial counsel to defend and vacate the default. MacDonald then issued a second reservation of rights on the basis of the fact that Norbell was not an insured under the policy on the date of the claimed loss, October 8, 1985.
Imperial continued to defend Norbell under its policy while the coverage questions were being investigated. Imperial, through counsel, determined that the said premises at 22-24 Atwood Street, Providence, Rhode Island, had been sold by Bellini to Norbell before the premises were listed under the property schedule of the Imperial policy and before the effective date of the policy. A declaratory judgment action was filed in the U.S. District Court for the District of Rhode Island by Imperial's prior counsel. DeSantis was not included as a party defendant in the Federal Court action.
The Federal Court ultimately dismissed the declaratory judgment action under federal abstention doctrine with no determination of the matter on its merits.
DeSantis intervened in the case at bar in November of 1991 and brought a separate action against Imperial (PC/97-3238) which has been consolidated with PC/91-2585.
Imperial asserts that it provided a defense under reservation and filing a declaratory judgment action. Under Rhode Island law, a duty to defend arises if there is a "possibility" of coverage being afforded under the insurance policy at issue.
 ISSUES
The issues presented in this case are whether or not there was a reformation of the contract of insurance which extends coverage by Imperial to the premises owned by Norbell, even though the premises were not listed as insured property under the policy issued by Imperial, whether or not Imperial voluntarily and intentionally relinquished any specific rights it has with regard to the policy in question to constitute a waiver, and whether or not Imperial should be estopped from raising certain rights or privileges as to a party that it would be inequitable to permit the assertion of the same. These issues will be addressed in turn.
 REFORMATION
An action for reformation of a written instrument when by reason of mutual mistake, mistake of an insurer or fraud, a policy of insurance does not express the true agreement of the parties, the writing, or in the instant case, the insurance policy may be reformed to express the true or actual agreement of the parties.
To warrant reformation of an instrument on the ground of mutual mistake, the plaintiff must establish the affirmative allegations by a preponderance of the evidence which is clear and convincing.Allen v. Brown, 6 R.I. 386 (1860).
In the instant case, DeSantis has sought reformation of the Imperial policy to include Norbell as a named insured.
The witness, Amitie Bellini, who secured the insurance on the premises in question, has testified that it was her intention to have Norbell Realty Corporation named as an insured in the policy itself. DeSantis and Bellini aver that Ms. Bellini's testimony alone which they assert is presented on the record without contradiction, in and of itself constitutes clear and convincing evidence of mistake.
In addition, DeSantis and Bellini assert that the testimony of Anthony Montalbano, Esquire, regarding the fact that his title search revealed that at the time of the insurance of the policy, Norbell Realty Corporation was the record owner of the premises at 22-24 Atwood Street. The parties aver that it defies logic that Ms. Bellini would have intended to name herself as an insured on a policy of insurance on property which she did not in fact own.
DeSantis Bellini also believe that the testimony of the Honorable Albert R. Ciullo and Richard Pacia, Esquire, regarding the need for binders of insurance be produced at the time of closing would have to have been issued for any closing and the mortgage lender named as a loss payee on said policy. This requirement was also testified to by Ronald Carletti, formerly a loan officer of R.I. Central Credit Union (RICCU), who was the actual loan officer involved in the closing. Mr. Carletti testified to the practice and procedure followed by RICCU and had no independent recollection of the actual events.
DeSantis and Bellini cite to two cases involving the issue of reformation of an insurance policy. The first case was Shapiro v. AlbanyInsurance Co. of New York, 56 R.I. 18 (1939). In this case, Ms. Shapiro sought coverage as a mortgagee and the policy actually listed her as an owner. The court held:
 "It appears from the evidence that there was ample justification for reforming these contracts of insurance. The evidence is uncontradicted that the respondents intended to and did issue policies of insurance against fire covering the real estate described therein. There is no dispute that the insurance was at the order of complainant and for her protection. There is no evidence whatever that the respondents would have refused to insure the complainant's interest as mortgagee in this property. The only difficulty occurs over the missed description of the complainant as owner whereas she should have been described as mortgagee."
The second case cited is New England Box Barrel Co. v. TheTravelers Fire Insurance Co., 63 R.I. 315 (1939). In this case an insured, Mr. Dix, had done business as New England Box Barrel Company for several years and was insured by the defendant for his goods. Mr. Dix subsequently incorporated his business, but continued to insure his business as if he personally owned it. A loss occurred, coverage was denied by the insurance company and at trial Mr. Dix presented absolutely no evidence that he ever advised Travelers of the corporation's existence. Clearly, neither he nor the insurer ever intended that the corporation be listed as a named insured.
It is averred that this case is not mirrored in the facts of the case at bar. The parties argue that the customary practices of the banking industry and the RICCU supports the contention that Ms. Bellini intended to insure the premises in the name of Norbell Realty Corporation.
Subsequent cases have held that simple error such as a misstatement of the name of the insured has been allowed by the United States courts to reform a policy. Old Colony Insurance Company v. Messer, 328 S.W.2d 335
(Tex.Civ.App. 1959) and Gillis v. Sun Insurance Office, Ltd.,238 Cal.App.2d 408, 47 Cal.Rptr. 868 (1965).
The Gillis case was an action to reform a policy covering damages to a docking facility. The policy named Trident, Inc. as the named insured. Trident, Inc. had ceased to exist as a result of a merger making it Kingston Trio, Inc. some two months before the issuance of the policy. Trident, Inc. at the time of the loss not only had no interest in the property, it did not exist. In a ruling that Kingston Trio, Inc. was entitled to recovery under the policy, the Court noted that the insurer admittedly intended to insure the property in question. There was no fraud or misrepresentation on the part of the insured. There was no increase of hazard on the part of the insurance company resulting from the error in the name of the insured. The insurer accepted and retained the premium payments. The only missing element that the Court of California found was the want of evidence to show whether or not the insurer had any information which would put them on inquiry as to the true identity of the owner of the property to be covered. Despite that, the Court ordered the policy to be reformed to allow Kingston Trio, Inc. to recover under its terms. In the case at bar, the only fact which differs from Gillis, supra, is that there was indeed evidence that the insurer, Imperial, here had information which put them on inquiry as to the true identity of the owner of the property to be covered.
The parties aver that in the present case, there is absolutely no doubt that it was the intention of the parties to name Norbell Realty Corporation as a named insured and that as a result of mistake, the policy in reference to the 22-24 Atwood Street parcel incorrectly named Amitie Bellini as opposed to Norbell Realty Corporation. Even under the most stringent standards argued DeSantis Bellini, Amitie Bellini and Michael DeSantis have established by clear and convincing evidence that the policy as a result of mutual mistake failed to include Norbell Realty Corporation as a named insured in reference to the 22-24 Atwood Street parcel.
In its response to DeSantis and Bellini's arguments and assertions, Imperial avers that if a mistake is made, in order for reformation to be warranted, the mistake must be common to both parties to such a degree that the contract in question fails, in some material respect, to reform the prior completed understanding of the parties. Vanderford v.Kettelle, 75 R.I. 130, 64 A2 483 (1949). The mistake must be common to both parties such that each party to the contract labors under a misconception concerning the terms of the contract sought to be reformed.
The Kettelle case supra., instructs that the trial court "must scrutinize evidence and proceed with great caution on evidence resting in parol; and credibility of witnesses and weight of evidence must be such as clearly to convince court without hesitancy of the truth of the precise fact in issue." The court goes on to say that granting reformation of an instrument [deed], on the ground of mutual mistake, must be established by clear and convincing evidence.
Imperial argues that the only testimony offered on the issue of mutual mistake by DeSantis and Bellini as to what was intended in terms of the insurance policy and the property to be covered by the policy was the testimony of Amitie Bellini solely.
There is no question that three insurance related entities were involved in the issuance of the policy on the subject property. That is CIS, as agent for Norbell Realty; Anexco, the entity issuing the policy; and Imperial, as the parent and responsible entity.
Imperial argues that there is an absolute dearth of evidence from Bellini or anyone else that CIS, as agent for Norbell, sought issuance of a policy by Anexco naming Norbell as the named insured as to the said Atwood Street premises. Imperial avers that there is no testimony concerning what CIS did, or for that matter failed to do, or anyone acting on behalf of or in privity with CIS even though CIS is still in business
This Court believes that the witnesses presented by DeSantis and Bellini with regard to their knowledge of practices and procedures employed by title, legal and financial service providers at the time of the closing, and procedures involved in this case in the late 1980's were credible, factual and reliable. The problem with those witnesses is that regardless of their varied experience and diverse efforts in the real estate and mortgage business during that time frame, none has any recollection of particular circumstances or facts in the case at bar.
Mr. Carletti made it clear that RICCU would never have issued the mortgage deed as to said premises unless the insurance binder had been issued to Norbell, the owner of the subject properties. Imperial concedes and this Court concludes that this must have occurred since RICCU did issue the mortgage deed in this case. There is not, however, a scintilla of evidence as to what happened after that brief binder expired, or what entity in the first instance issued it for the aforementioned closing.
What is apparent and this Court finds as a fact, that no insurance policy was issued by any insurer as to said properties. It appears that in any event, it would not be Imperial's policy dated May 12, 1985, issued 2 weeks after the closing of April 30, 1985 (see Plaintiff's Ex. 5).
The only evidence bearing at least on Bellini and Norbell's intentions in this regard comes from Amitie Bellini herself. The principal of Norbell Realty, Norman Reesch, did not appear in court or by deposition in this case. Ms. Bellini testified that she had significant experience in the real estate business from the time she was 18 years old to the present. Despite her stated experience in buying and selling real estate, Ms. Bellini was extremely vague in her ability to recollect, recall and recount the insurance agents she used or consulted with in and around the time of the closing in question. She also testified she never reviewed or read the declarations of insurance provided to her on her various properties from her unrecollected various agents.
Throughout her testimony, Ms. Bellini admitted that she was responsible for insurance arrangements with regard to Norbell real estate. She claims she asked CIS to get coverage for the Norbell properties but knows little else of what CIS did or didn't do to obtain coverage. She did testify that she didn't care for the practice of CIS and was never happy with her dealing with CIS.
What is most incredible is Ms. Bellini's utter inability to tell the Court which agent or agency she chose to handle insurance coverage for real estate owned by Norbell or by Ms. Bellini. Despite any specific recall, Ms. Bellini attempts to cast blame on a Steven Goldin, an agent for CIS, saying it was his error not to add the Atwood Street property to the policy. Yet, neither she nor Norbell have ever made a claim against CIS for their alleged negligence.
A review of the testimony of Amitie Bellini, and the weighing and sifting of her credibility as a material witness in this case, leads this Court to conclude as a matter of fact that Ms. Bellini's testimony is not forthright, credible or reliable regarding the course of events that she testified to regarding her efforts to insure the subject premises.
The Court also concludes that the testimony of Mr. Carletti, Hon. Ciullo, Mr. Montalbano and Mr. Pacia, while credible and reasonable in their explanation of customs and practices of financial institutions, title examiners, and closing attorneys with regard to closing requirements in effect at the time of the closing of the subject property, does very little, if anything, to advance the DeSantis and Bellini theory that a mutual mistake was made in this course of dealings sufficient, by clear and convincing evidence, to reform the contract of insurance to require coverage of the Atwood Street premises and hold Imperial liable to all parties as the insurer of those premises.
In fact, the record is totally devoid of any substantive evidence which in any respect leads the Court to believe that Imperial, or any of its agents, intended to extend insurance coverage to the Atwood Street premises.
This proof by clear and convincing evidence is required in order for the Court to order the reformation sought. This Court finds as a fact and as a conclusion of law that the claims of Bellini and DeSantis are unilateral assertions at best and based on the Court's assessment of the credibility of Ms. Bellini barely establish the assertion.
Accordingly, the Court concludes as a mater of fact and law, that Bellini and DeSantis have failed to prove mutual mistake by clear and convincing evidence.
 WAIVER
DeSantis and Bellini assent that the payment of $250.00 deductible to Imperial by Amitie
Bellini while MacDonald was investigating the claim, is conclusive evidence that Imperial waived whatever right it might have had to contest coverage of the premises. DeSantis and Bellini cite to Milkman v. UnitedMutual Ins. Co., 20 R.I. 10 (1897), where the R.I. Supreme Court held that acceptance of a premium on an insurance policy after a loss with knowledge of a break on the insured's part with regard to the policy terms constitutes a waiver of the breach and is an affirmation of the validity of the policy.
Imperial presented testimony that the $250.00 requested from Bellini was for the legal expenses expended in the investigation of the claim, and was not a premium for the policy.
Under Rhode Island law, waiver is the voluntary, intentional relinquishment of a known right. URI Cogeneration Partners LLP v. Boardof Governors Higher Education, 915 F. Supp. 1267 (D.R.J. 1996); Pachecov. Nationwide Mutual Ins. Co., 114 R.I. 575 (1975).
Imperial asserts that there is no evidence whatsoever that Imperial voluntarily, intentionally relinquished any specific right it had in regard to the Imperial policy here. Imperial had, through MacDonald, issued its reservation of rights letters as soon as it was prejudiced by late notice and as soon thereafter (within 12 days) that it had an opportunity to compare the allegations of the complaint to the policy to ascertain whether the complaint, in any respect, made a claim against the named insured, Bellini.
After issuing two reservations of rights, Imperial (through MacDonald) then retained its own separate counsel to undertake a search of the land evidence records to determine the title to said premises. Imperial then sought the advice of its separate Rhode Island counsel and followed the advice of counsel in terms of filing a declaratory judgment action. A declaratory judgment action was filed and, for some reason, failed to include DeSantis as a party defendant, originally. However, in November of 1991, over four months before the trial of the DeSantis complaint, DeSantis intervened in the instant action. There is no indication, from any evidence, that has been presented to the Court which argues that Imperial ever voluntarily and intentionally relinquished any of its rights under the policy.
DeSantis apparently claims that Imperial's securing of the deductible amount from Bellini in 1991 was evidence of some sort of waiver by Imperial (see Defendant's Ex. C). Under the Imperial policy (see
Plaintiff's Ex. 5), there was a specific form providing for a deductible as to liability insurance. Form L 9294 (Ed. 1-73), Deductible Liability Insurance is provided with a $250.00 per claim Bodily Injury Liability deductible which, by its specific terms, included adjusting costs. There is no question that Imperial, through MacDonald, had been adjusting the claim of DeSantis since January of 1986 when the claim was first brought against Norbell. Imperial was entitled to the $250.00 of the deductible towards its adjusting costs. The fact that Imperial insisted upon a policy provision available to it is in no respect evidence of any waiver by it as to any of its rights, duties and obligations. Indeed, under the two reservations of rights letters, Imperial was entitled to insist upon payment, by Bellini, of the deductible in the Imperial policy issued to Bellini.
A review of the testimony of Imperial's witnesses and the exhibits introduced as referenced above, lead the Court to conclude that the $250.00 deductible requested of and paid by Bellini was for the stated purpose of meeting adjusting costs while investigating and determining the validity of a claim taken under a reservation of rights.
The Court concludes as a matter of fact and law that the acceptance by Imperial of the $250.00 did not establish that Imperial had waived its right to investigate a disputed claim and therefore conveyed coverage by Imperial to the subject property.
 ESTOPPEL
DeSantis and Bellini presented evidence in support of their position that Imperial is estopped from denying coverage in this case. DeSantis and Bellini aver that evidence came from Amitie Bellini, John Piazza and ultimately Paul Amoruso. Ms. Bellini testified that aside from the initial reservation of rights letters received by her in December, 1987, the service of a summons and complaint upon her in reference to the two declaratory judgment actions, and the demand for payment of the $250.00 deductible, she received no other communications from Imperial in reference to its investigation, settlement, and handling of the claim.
The parties argue that a non-waiver agreement from Ms. Bellini should have been obtained by Imperial and this was not done. They also argue that John Piazza, as agent of Imperial, made a determination in July of 1988 that there was coverage for Norbell with regard to the claim of DeSantis and that opinion changed when Imperial learned that the DeSantis claim may exceed the policy limits. DeSantis and Bellini then alleged that it was then that Imperial commenced a declaratory judgment in Federal Court and later in the Superior Court.
DeSantis and Bellini also aver that Imperial did not notify Bellini or Norbell of their respective rights to independent counsel and that even when private counsel for Bellini was obtained, there was no communication between that counsel and Imperial. They argue that these actions by Imperial estop Imperial from denying coverage.
Imperial counters these arguments by averring that while Imperial never entered into a non-waiver agreement with Bellini or Norbell, it did seek a declaratory judgment in the Federal and State courts which is an option available to an insurer faced with a coverage question. Cononicut MarineServices, Inc. v. Insurance Company of North America, 511 A.2d 967 (R.I. 1986). Imperial argues that while it had no obligation to do so, it vigorously defended Norbell against the DeSantis claim under a reservation of rights.
The doctrine of estopped bans an insurer from raising certain rights or privileges as to a party that it would be inequitable to permit the assertion of the same. The doctrine of estoppel rests the prejudicial reliance on actions of the insurer by the insured. The key element of estoppel is the "intentionally induced prejudicial reliance." Martinelliv. Travelers Insurance Companies, 687 A.2d 443 (R.I. 1996).
Imperial argues that there is no evidence of any intentionally induced prejudical reliance by Bellini or Norbell resulting from actions of Imperial.
The Court has reviewed and considered the claims of Bellini and DeSantis with regard to estoppel and finds no credible evidence that Bellini or Norbell relied on any intentionally induced information provided by Imperial.
This Court has earlier determined that there was no reformation or waiver proved in this case and that effectively there was no coverage afforded to Norbell by any policy issued on the Atwood Street premises by Imperial.
The doctrine of estoppel may not be invoked to expand the scope of an insurance policy. Leiter v. Allstate Insurance Company, 725 A.2d 882
(R.I. 1999); D'Antuono v. Narragansett Bay Insurance Company, 721 A.2d 834
(R.I. 1998); Martinelli v. Travelers Insurance Companies, supra; Pachecov. Nationwide Mutual Insurance Company, supra. Further, estoppel requires intentionally induced prejudicial reliance. East Greenwich Yacht Club v.Coastal Resources Management Council, 118 R.I. 559, 376 A.2d 682 (1977).
Therefore, the Court finds as a matter of fact and a conclusion of law that the doctrine of estoppel does not obtain in this case and that aspect of the claim is denied and dismissed along with the claims of reformation and waiver.
DeSantis and Bellini raise additional issues of Spoliations on Debt on Judgment. The Court finding no coverage or liability on Imperial will not discuss the debt on judgment aspect of this claim.
With regard to spoliation, DeSantis and Bellini aver that all attempts to recover documents germane to the coverage questions presented in this case were met with no success. Spoliation arises when material evidence in control of a party — which cannot be produced — creates an inference that the missing evidence was in fact unfavorable to the party unable to produce it. Tancrelle v. Friendly Ice Cream Corp., 756 A.2d 744
(R.I. 2000). The Court has considered this allegation raised at trial, and while no policy application was ever offered by Imperial in this case, there was also no binder produced by RICCU which purported to have named Norbell as the named insured, nor was there any documentary evidence produced or elicited to the Court's knowledge from CIS, the entity from which Ms. Bellini took the original application. Accordingly, in reviewing the cases submitted by counsel on the issue of spoliation, this Court does not believe, under the totality of the circumstances, that the facts warrant an unfavorable reference be drawn against Imperial for its inability to produce the documents in question.
While there is no question in this case that it has been unfortunately drawn out over these many years, the trial court is unable to cast or attribute blame to specific parties in this case.
The tort action of DeSantis v. Norbell was allowed to proceed by Cresto, J. (Retired). The trial was held before a justice of this Court, Gibney, J., an award made by the jury and a stay of execution of judgment awarded by the trial justice until the coverage question was resolved. Another justice of this Court, Fortunato, J., ordered Imperial Casualty to deposit $603,500.00 as security with the Registry of the Court on the judgment obtained by Mr. DeSantis against Norbell Corporation.
Based on the findings of this Court and the conclusions of fact and law rendered herein, this Court finds for the plaintiff, Imperial Casualty Indemnity Company on its claim for 14 declaratory judgment and against Amitie Bellini, Norbell Realty Corporation and Michael DeSantis on their claims for coverage under any policy of Imperial. The Court will allow Imperial to withdraw its deposit from the Registry of the Court and allow Mr. DeSantis to proceed on his judgment obtained against Norbell Realty Corporation, lifting any stay heretofore in force against that judgment.
The parties will submit a judgment in accordance with this decision.