APRIL 2, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. This action on a promissory note, secured by a mortgage on real estate, against a person whose signature appears on the back of the note below a formal waiver of presentment, demand and notice, was brought to recover a deficit appearing after a foreclosure sale. The trial in the Superior Court before a justice sitting without a jury resulted in a decision for the plaintiff for $58,000 plus interest. The case is here on the defendant's exception to said decision.

On September 20, 1929, one Myer, the owner of an apartment house, executed a second mortgage thereon to defendant Emery to secure the payment of a negotiable promissory note for $85,000 for three years. The note provided that $2,000 be paid on the principal at the end of each period of three months. On October 30, 1929, Myer conveyed his equity in the property to the Albert Realty Company, a corporation composed of the plaintiff, his wife and his son. To avoid the payment of the high interest rate provided for in said note the Albert Realty Co. anticipated the quarterly payments of $2,000 each, with the result that on June 20, 1930, the note had been reduced to $60,000 by payments by checks of the corporation signed by the plaintiff, John Lisker, as treasurer.

On September 20, 1930, which was an interest date, the plaintiff, Lisker, paid to defendant, Emery, $60,000, and Emery signed and delivered a transfer of the mortgage in blank and delivered the mortgage deed, note and title policy to plaintiff. At the same time defendant, at plaintiff's request, signed the blank form of discharge printed on the back of the mortgage. The $60,000 was paid as follows: $10,000 by check of plaintiff's wife drawn payable to the Albert Realty Co., the owner of the equity, and $50,000 by checks of the plaintiff. The note, mortgage and other papers were deposited with the Exchange Branch of the Industrial Trust Co. as security for a loan from it to plaintiff. On November 21, 1930, the apartment house was conveyed by the Albert Realty Co. to the plaintiff's wife. On June 15, 1932, plaintiff paid to the bank the loan of $40,000 and received the mortgage papers deposited as collateral. The note matured on September 20, 1932.

On receipt of the papers from the bank the plaintiff so filled in the blank form of transfer as to cause himself to appear to be the assignee of the mortgage. On September 29, 1932, plaintiff recorded the transfer. On October 6, 1932, appeared the first advertisement of the foreclosure sale under the mortgage, and on October 28, 1932, at the foreclosure sale plaintiff sold the property to himself for $2,000. On said date the title to the property was in plaintiff's wife. Thereafter plaintiff brought this suit to recover the deficit, that is, the difference between $60,000 and $2,000, the amount for which the property was sold at the foreclosure sale.

The main question is whether, as between plaintiff and defendant, the mortgage was paid off or whether it was assigned to plaintiff.

Soon after the defendant made the original loan and received the mortgage papers they were used as collateral for a loan to defendant's brother by the Rhode Island Hospital Trust Co., hereinafter called the trust company. At that time defendant indorsed the note and the trust

company stamped the waiver clause on the back thereof. It is admitted that the defendant then indorsed the note above the waiver. Although there is some evidence that the indorsement below the waiver was made at the time of the transaction in the Exchange Branch of the Industrial Trust Co., we think there is little doubt that both signatures were placed on the note at the time of the loan by the trust company to defendant's brother. The ink used appears to be the same and certainly differs from that used by the defendant in signing the papers at the Exchange Branch of the Industrial Trust Co. The clerk who handled the loan to defendant's brother at the trust company testified that it was its custom to require an indorsement both above and below the waiver clause. If no indorsement below said clause was obtained by the trust company, the absence thereof could be explained only as an oversight on its part when making a loan of $125,000.

While the findings of fact made by a trial justice on conflicting testimony have great persuasive force, this court is as competent as the court below to draw inferences from the undisputed facts and testimony. *Stiness* v. *Brennan*, 51 R. I. 284. It is certain that defendant did not come to the bank prepared to transfer the mortgage. Plaintiff testified that he procured the blank form. It was signed by defendant in blank, and, at plaintiff's request, a bank clerk took defendant's acknowledgment of this document in blank. From the established facts, we think the inference is unavoidable that there would have been no transfer signed had it not been necessary for plaintiff to use the note and mortgage as collateral to borrow $40,000 to pay to the defendant. After the loan was made the plaintiff obtained the mortgage deed from one of the bank clerks and requested defendant to sign the discharge clause. At the plaintiff's request this clerk witnessed defendant's signature on the discharge.

In requesting this discharge plaintiff was acting inconsistently with his present contention that he bought the

mortgage as a personal investment. He had a transfer of the mortgage in blank which could be filled out and recorded and discharged as soon as it had fulfilled its purpose with the bank. In obtaining the discharge plaintiff was protecting the interest of his corporation which paid $10,000 of the $60,000 which defendant received. The payment by the corporation was made by check drawn by plaintiff, acting as attorney for his wife, on her bank account, payable to said corporation and indorsed by plaintiff, as treasurer thereof, to the defendant. If the transaction was not intended to constitute payment why did the owner of the fee, that is, the corporation, contribute a portion of the amount due on the mortgage? By executing the discharge the defendant signed away the right to insure the interest of an indorser in the property. In the course of the transaction the plaintiff was acting in a triple capacity: for his wife, from whom he held a general power of attorney, for his corporation and for himself.

We have not overlooked the plaintiff's testimony to the effect that when he tried to persuade the defendant to discount the mortgage the defendant said the mortgage was good and he would stand behind it, nor plaintiff's testimony, as follows, as to his request that defendant sign the discharge: "I said to Mr. Emery . . . 'Mr. Emery, would you just as soon sign that mortgage? If I could get a purchaser (for the property) who would be willing to pay off the mortgage, I could use that as a discharge.' He said he would." A request by a shrewd and experienced business man to the mortgagee to sign the discharge which contains an acknowledgment of receipt of payment is entirely inconsistent with an intention at that time to keep the mortgage and note alive, except for the purpose of serving temporarily as collateral.

The defendant's exception to the decision for the plaintiff is sustained.

On April 6, 1934, the plaintiff may appear and show cause, if any he has, why the case should not be remitted to the

Superior Court with direction to enter judgment for the defendant.

*Francis J. O'Brien, James J. McGovern,* for plaintiff.
*Henry M. Boss, Jr.,* for defendant.