Metropolitan Life Insurance Company *vs.*
Elsie E. Miller Sandstrand *et al.*

AUGUST 1, 1951.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Flynn, C. J. This bill in equity was brought by an insurer to have two claimants interplead for the proceeds of a policy of life insurance. In the superior court a decree of interpleader was duly entered, the proceeds of the policy were paid into court, and the case was heard on the second amended bill of complaint, answers filed by the respondents, and evidence. A final decree was entered awarding the proceeds of said policy to the respondent Esther A. Taylor, and from that decree respondent Elsie E. Miller Sandstrand has duly claimed an appeal to this court.

The complainant is the insurer under a policy of life insurance issued by it to Gustaf A. Miller, now deceased. The respondents Elsie E. Miller Sandstrand and Esther A. Taylor, hereinafter referred to respectively as Elsie and Esther, are married daughters of the insured. Upon the death of the father each respondent made claim upon the complainant for payment of the proceeds of the policy. Thereafter the insurer brought the instant bill of interpleader and paid the proceeds of $1,038.14 into the registry of the court under the decree therein entered.

The evidence for Esther tended to show the following facts. The original beneficiary named in the policy was the insured's wife, Emelia W. Miller. The policy contained a clause expressly reserving to the insured the right to change the beneficiary in accordance with certain procedures therein stated. Upon the wife's death in 1942 the insured, who was retired from his employment, con-

tinued to live with Elsie. Subsequently differences arose between the father and Elsie over the latter's prospective husband, and the father left the house and went to live with Esther.

When the father was leaving Elsie's home he asked for the policy but she refused to give it to him. Because of her remarks he then engaged a law firm to obtain the policy in order to make a desired change in the beneficiary to Esther, and to bring a law action against Elsie for the recovery of certain property. His attorneys made formal demand on Elsie for delivery of the policy but this was refused by her upon advice of her own counsel.

The father's attorneys also notified the insurer of the insured's intent to change the beneficiary to Esther and directed the company not to pay the proceeds thereof to Elsie or to anybody other than Esther. The same attorneys then obtained from the company's local office a printed form which was provided and used by the insurer for a change of beneficiary. This was filled out in part by the attorneys and in part by Esther, but it was later executed and acknowledged on July 26, 1945 by the insured personally in the office of his attorneys with whom he left it with instructions to accomplish such change. This form designated Esther as beneficiary and made the policy payable to her.

Apparently the form remained in the attorneys' office from July 26 to October 22, 1945 without being mailed to the home office of the insurer. From a statement in a letter to the company, however, it appears that the attorneys felt the policy would be obtained when the law action against Elsie was adjusted. In addition during that period the father had sought on three occasions to obtain the policy from Elsie but was twice refused and on the third visit Elsie was not at home. New locks had been placed upon the doors to which he formerly had keys.

Subsequently on October 21, 1945 the insured was

struck by an automobile and sustained serious injuries. The next day in the hospital he again talked with Esther and told her to go to the attorneys and find out if they had succeeded in obtaining the policy and making the change of beneficiary as instructed. When informed by Esther on her return from the attorneys that they had forwarded the change of beneficiary that day to the company's Providence office, he expressed satisfaction by stating that she "would have the insurance policy now — 'You can take care of things and see that I am buried right.'" The insured died on October 23, 1945 from injuries received in the accident, and his funeral was arranged for by Esther.

On the other hand the testimony for Elsie tends to show the following facts. For many years she had lived with her father and mother and had worked hard. After her mother's death Elsie continued to live with her father and he designated her as beneficiary under the policy on December 11, 1942. A friend of the family, named Sandstrand, frequently visited their home and sometime after the father went to live with Esther, Sandstrand married Elsie. According to her there was no difficulty or quarrel between her and her father in connection with Sandstrand, and she denied using any harsh words to her father when he was leaving as testified to by Esther. She stated that he had never asked for the policy before or after he left; that he had come to visit her only once and then did not seek the policy; and that the new locks had been placed on the doors, not to keep him out but to protect the house during her stay in New Hampshire where Sandstrand owned a home. She also testified that her father had received and taken with him everything he desired, and that she was the executrix named in his will.

She further gave considerable testimony in detail as to her work with her father and mother while her mother was living; the care she gave her father until he left; and Esther's receipt of considerable money from the father in

order to help her to build a new house. Although Elsie admitted the receipt of $26 a month from her father while he lived with her, she testified that she paid the $11 monthly premium on the insurance policy out of her own money.

The trial justice found in substance that the policy reserved to the insured a right to change the beneficiary; that the procedural steps under which such a change was to be recorded at the home office on the policy itself were intended for the benefit of the insurer; and that the bringing of the bill of interpleader by said insurer waived any objection it might have interposed to the method by which a change of beneficiary was accomplished, citing *John Hancock Mutual Life Ins. Co.* v. *White*, 20 R. I. 457, and *John Hancock Mutual Life Ins. Co.* v. *Bedford*, 36 R. I. 116. He further held that Elsie had no vested right in the policy merely because she had been named formerly as beneficiary or because of her payments of some premiums on the policy; that she could not validate her right to the proceeds by unlawfully retaining possession of the policy against the demands therefor made by the insured; that the change of beneficiary was actually executed and forwarded to the company in accordance with the father's intent and instructions before his death; that the purpose of the attorneys' delay in forwarding the change of beneficiary was clearly explainable; and that no evidence indicated any change as to the insured's original intent and instructions to his attorneys to accomplish such a change.

Counsel for Elsie argues in substance and effect that Esther had not proved by a fair preponderance of evidence that she was properly named as beneficiary; that the trial justice apparently misconceived the law and the evidence in that he found merely a *desire* on the insured's part to designate another beneficiary rather than to find an effective change thereof in law and fact; that the policy itself required such a change to be sent to the home office with the policy and to have the change of beneficiary endorsed

462

thereon in order to become effective, which was admittedly not complied with; and that we can draw our own conclusions from undisputed evidence equally with the trial justice, citing *Stiness* v. *Brennan*, 51 R. I. 284, and *Lisker* v. *Emery*, 54 R. I. 190.

In our opinion the trial justice did not misconceive the law or the evidence relating to the change of beneficiary. It is clear that under a policy wherein the right to change the beneficiary is expressly reserved to the insured, as here, a beneficiary for the time being acquires no vested interest therein which would deprive the insured of the right to change the beneficiary in accordance with the terms of the policy. *John Hancock Mutual Life Ins. Co.* v. *Bedford, supra.* Moreover the requirements that a change of beneficiary be filed at the home office and be endorsed upon the policy itself in order to make such change effective are conditions solely for the benefit of the insurer. *John Hancock Mutual Life Ins. Co.* v. *White,* and *John Hancock Mutual Life Ins. Co.* v. *Bedford, supra.*

By bringing the instant bill of interpleader, raising no objection in its own behalf and offering to pay the proceeds to either claimant who is found to be entitled thereto, the insurer has waived any question as to completing the change of beneficiary in accordance with the strict terms of the policy. Furthermore in circumstances where the insured is prevented from obtaining the policy, as here, it has been held that a substantial compliance by the insured with the terms of the policy is sufficient to effectuate a change of beneficiary. However, in our judgment such compliance requires that an insured must intend and personally or through an authorized agent send a change of beneficiary to the insurance company. In other words, he must do all that he reasonably could be expected to do in the circumstances in order to effectuate his intention to change the beneficiary in the policy. If an insured meets such requirement in a proper case his action is given

effect even though such a change had not reached the home office of the insurer before the death of the insured. *State Mutual Life Assurance Co.* v. *Bessett,* 41 R. I. 54.

In the instant case the insured made reasonable efforts to obtain the policy but was unsuccessful because of Elsie's attitude. He engaged attorneys and instructed them to obtain the policy and to make a change of beneficiary thereunder to Esther. Between July and October there was reasonable expectation that the policy would be obtained through either the attorneys' efforts or his own visits to Elsie. Nowhere is there any indication that he instructed the attorneys to withhold sending the change of beneficiary and there is no evidence that he changed his original intent or instructions to them. On the contrary he directed Esther as late as October 22 to go to the attorneys and find out whether they had been successful in carrying out his instructions. When informed by Esther on her return that the intended change of beneficiary was mailed that day by his attorneys, he expressed himself in language that reasonably implied confirmation of what had been done in his behalf. In the peculiar circumstances the insured appears to have complied with the requirements set forth in *State Mutual Life Assurance Co.* v. *Bessett, supra.*

We do not agree with Elsie's contention that the evidence showed only a desire on the part of the father to designate a new beneficiary or that the trial justice found merely that the father *desired* such change without effecting it. In our opinion the decision shows that the trial justice found not only a desire on the father's part to change the beneficiary to Esther, but also found that in view of Elsie's unlawful withholding of the policy and the other steps taken by the father and his attorneys he had done all he reasonably could be expected to do by way of substantial performance to effectuate the change. We have examined the transcript and in the circumstances therein appearing

464

we cannot say that the trial justice was clearly wrong in his findings of fact or in his application of the law, as above cited.

Elsie also argues that we can draw our own conclusions because the evidence is undisputed. In our judgment the evidence is conflicting in certain material respects. That and the credibility of the witnesses made an appropriate case for determination by the trial court and the application of the pertinent law above set forth. If we may assume that the evidence in any respect is undisputed, such assumption must be restricted on this record to Elsie's payments of certain premiums. That fact, however, would not entitle her to the policy or its proceeds. In answering an identical argument by a similar claimant in another case, this court held that such payments did not have "any materiality in the determination of her right to the fund." *John Hancock Mutual Life Ins. Co.* v. *Bedford,* 36 R. I. 116, 122.

The appeal of Elsie E. Miller Sandstrand is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Arthur L. Conaty,* for respondent Elsie E. Miller Sandstrand.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent Esther A. Taylor.